## JACKSON, *ex dem.* LYNCH, *against* HARTWELL.

A. granted to the supervisors of the county of *Oneida*, a parcel of land, upon trust, that they should erect and build on one part of it, lying *east* of a certain

THIS was an action of ejectment, brought to recover the possession of a school-house, in the village of *Lynch-ville*. The cause was tried at the *Oneida* circuit, in *June* last, before Mr. Justice *Van Ness*.

The plaintiff gave in evidence a deed, dated the 21st

street, a *court-house and gaol*, and that they should suffer that part lying *west* of the same street, to be appropriated for building a *church and school-house for the use of the inhabitants of Rome.* It was held that if the supervisors of the county were a *corporation*, they had no capacity to take and hold lands, as supervisors, for the use of the inhabitants of *Rome*, or for any other use or purpose than that of the county which they represented. Even a regular corporation aggregate, cannot be seised of land, in *trust*, for purposes foreign to its institution. The supervisors of a county are a corporation with special powers, and for special purposes only; and it is very questionable, whether, prior to the act passed 8th *April*, 1801, (sess. 24. c. 180.) they were competent to take a grant of land.

*May*, 1800, from *Dominick Lynch* to the supervisors of the county of *Oneida*, which recited, that by an act of the legislature, passed the 15th *March*, 1798, the said supervisors were authorized, and had agreed and determined, to erect and build a court-house and gaol in the town of *Rome*, in and for the county of *Oneida*; and that the lessor was owner of a certain tract of land, situate in the town of *Rome*, in the village called *Lynchville*, and the supervisors had agreed upon the lots or pieces of land thereinafter conveyed to them, as a suitable site for the said court-house and gaol; therefore, the plaintiff, in order to promote the settlement and embellishment of *Lynchville*, and in consideration of one dollar, granted to the said supervisors, certain lots of land therein described, to have and to hold the same to the said supervisors, and to their successors in office, and their own proper use and behoof for ever; upon the special trust and confidence, nevertheless, that the said supervisors and their successors should, without delay, erect and complete a court-house and gaol upon part of the premises so granted to them, and allotted for that purpose; and that the said supervisors and their successors in office, shall and will, at all times, for ever thereafter, permit and suffer all that part of the granted premises, situate west of a certain street called *James* street, to be laid out and appropriated for the building and erecting a church and school-house thereon, which church and school-house shall be established and built according to the direction and appointment of a majority of the freeholders, being inhabitants of the town of *Rome*, for the time being, for the use, benefit and advantage of all the inhabitants of the town of *Rome*; and that the said supervisors and their successors in office, should, for ever thereafter, permit and suffer all that part of the premises thereby granted, situate east of *James* street, to be laid out and appropriated for the purpose of erecting the court-house and gaol; and also that they shall, at all times thereafter, for ever permit and suffer

the whole piece or parcel of land and premises thereby granted, and every part thereof, to be and remain a public square; and provided, also, that the said supervisors and their successors in office, shall not, at any time thereafter, build, or suffer to be built, or erected, upon any part of the premises thereby granted, any dwelling-house, edifice, or building, upon any pretence whatever, within fifty feet of any part of the boundary line of the premises, &c.

The plaintiff then offered to prove, that the school-house was originally built on the west side of *James* street, on a line with the church, court-house, and gaol, and agreeably to the original plan, agreed on and adopted by the parties, and contributed much to the ornament of the village; that some time before the commencement of this suit, the lessor sold a lot to *H. Huntington*, on the north side of the square, and that he and others removed the school-house to the opposite side of the square, so as to be distant 70 feet from a corner lot of the lessor, on the south side of the square, and materially to injure the value of the lot, and destroy the beauty and symmetry of the public square, although the lessor opposed and forbade the removal of the school-house; and that the removal was made without any vote or resolution of a majority of the freeholders or inhabitants of the town of *Rome*. This testimony was overruled by the judge, and a verdict was taken, by consent, for the plaintiff, subject to the opinion of the court on a case containing the above facts.

*Platt* and *Lynch*, for the plaintiff.

*Clark* and *Gold*, contra.

*Per Curiam.* The grant from *Lynch* to the supervisors of the county of *Oneida*, was for several purposes. That part of the land which lay east of *James* street was

granted to them for the use of the county, for the erec- <span>NEW-YORK,<br>October, 1811.</span>
tion and accommodation of a court-house and gaol, and
that part of the land which lay west of the said street <span>JACKSON<br>v<br>HARTWELL.</span>
(and which includes the school-house or premises in
question) was granted for a church and school-house,
" for the use, benefit, and advantage of the inhabitants of
the town of *Rome*." Admitting the grant of the first
parcel of land to have been valid, prior to the act of
1801, it does not follow that the grant of the second
parcel, for a different use, was valid. If the supervi-
sors were a corporation, it was only for certain special
purposes, declared by the act of the 7th *March*, 1788.
They certainly had no capacity to take and hold lands,
as supervisors, for any other use or purpose than that of
the county which they represented. They were not com-
petent to be seised as trustees for the use of an individual,
or of the inhabitants of a village. Even a regular cor-
poration aggregate, with its usual plenary powers, could
not be so seised, for it would be foreign to the purpose
of its institution, and the trust could not be duly enforced.
(1 *Plowd.* 103. 1 *Kyd on Corporations*, 72.) The su-
pervisors of a county are a corporation for special pur-
poses, and with special powers only; and it is very ques-
tionable, whether, before the act of 1801, (*Laws*, vol. 1. p.
561.) they were competent to take a grant of land. There
are many instances, in the law, of collective bodies of
men, coming under one general description, endowed
with a corporate capacity in some particulars expressed,
but who have, in no other respect, the capacities inci-
dent to a corporation. Thus, in *England*, under the sta-
tute of *Winchester*, the hundred can be sued in its col-
lective capacity. So churchwardens may take goods, and
bring actions of trespass, but a feoffment to them would
be void, for they have no capacity for such a purpose.
Numerous examples, of the like kind, are mentioned or
referred to by Mr. *Kyd*, in the introductory chapter to
his treatise on corporations. (*Kyd on Corp.* vol. 1. p. 9,

NEW-YORK,
October, 1811.

10. 12. 29. 31.) Our laws are full of instances of per-' sons clothed with corporate powers, for certain special purposes. The loan-officers of a county are a corpora-tion; and could they, as such, receive a grant of land for the use of a town, or of a church? Certainly not. Nor can the supervisors of *Oneida* take a grant of land, for the use of the town of *Rome*. Such a grant must be deemed void, upon every principle, whether we consider the special and defined objects of a corporate capacity in the board of supervisors; whether we consider the power given them by statute, to take conveyances of land, *for the use of the county;* or, lastly, whether we refer to the incapacity of all corporations, to hold lands in trust, for any other object than that for which the corporation was created.

Whether the court of equity would, or would not, pre-vent the trust, as to the inhabitants of *Rome*, from failing, for want of a trustee, is a question not for this court to decide. It is enough in this case, that a court of law cannot supply the want of a sufficient grantee. We are of opinion, that judgment must be rendered for the plain-tiff.

Judgment for the plaintiff.