OVERSEERS of the POOR of NORWICH, *against* the OVERSEERS of the POOR of NEW-BERLIN.

An act for the division of a town, directed the supervisors and overseers of the poor of the two towns, to meet and divide the money and the *poor* belonging to the town so divided, according to the last tax list, and that each town thereafter should respectively maintain its own poor:

IN ERROR to the Court of Common Pleas of *Chenango*. *Taylor* and *Medbury*, defendants in error, as overseers of the poor of the town of *New Berlin*, brought an action of *assumpsit* against *Rouse* and *Thompson*, overseers of the poor of the town of *Norwich*, on a special contract, dated *July* 3, 1808, between the supervisors and the overseers of the poor of the two towns. By a statute passed the 3d of *April*, 1807, the old town of *Norwich* was divided, and a part thereof erected into a new town, by the name of *New-Berlin*. The

and the supervisors and overseers of the two towns, met accordingly, and divided the poor money between the two towns, and found six paupers in the old town, which they agreed should be maintained by the overseers of *both towns*, in equal proportion, according to the division of the money, and then the paupers to be disposed of by the poor masters of both or either of the towns, to the best advantage. In an action of *assumpsit* brought by the overseers of one of the towns, against the overseers of the other, on this agreement, for its proportion of the expense of supporting one of the paupers, after the money so divided had been spent: *Held*, that the *overseers*, &c. in making this agreement, transcended the powers given them by the act, and that, therefore, no action could be maintained upon it, admitting, even, that overseers of the poor may, as such, contract for the maintenance of the poor, so as to bind their successors in office.

act contained the usual provision, " that the supervisors and overseers of the poor of the towns of *Norwich* and *New-Berlin* should meet together, and divide the money and poor belonging to the town of *Norwich* previous to the division thereof, according to the last tax list, and that each of the said towns should forever thereafter respectively maintain its own poor." The supervisors and overseers of the poor of the two towns accordingly met, pursuant to notice for that purpose, and by written agreement determined, that there were six paupers of the old town of *N.* ; and after dividing the poor money belonging to the town of *N.*, giving to the former 175 dollars and six cents, and to the new town 173 dollars and fifty cents, instead of dividing the poor, they agreed, as follows : " the poor found on the town of *Norwich*, the last *Tuesday* of *February*, consisted of *William Jones*, and his wife and four children, which we agree to support, in proportion, according to the division of the poor money between the two towns, according to the act in that case made and provided, each town respectively to pay the equal proportion according to the division of the monies ; these poor persons to be disposed of according to the best advantage, by the poor masters of the said towns, or of either of the said towns." This agreement was signed by the supervisors and overseers of the poor of the two towns then in office. It was proved at the trial, that the overseers of the poor of *New Berlin*, since 1808, had expended 255 dollars, in maintaining *William Jones*, on which they charged 17 dollars interest, and 14 dollars for their services as overseers, amounting in the whole to 286 dollars and 64 cents. It appeared that the wife and children of *W. Jones*, after the division, became no longer chargeable. The plaintiffs below claimed to recover of the defendants below, a part of the above sum, according to the ratio agreed upon between the supervisors and overseers of the two towns.

The defendants objected to the admission of the written agreement in evidence, on the ground that a special contract made by one set of overseers could not be given in evidence in an action against another set of overseers ; but the Court overruled the objection. The plaintiffs, also, offered in evidence several contracts and vouchers relative to the monies expended by them in supporting the pau-

UTICA,
October, 1820.

OVERSEERS OF
NORWICH
v.
OVERSEERS OF
NEW-BERLIN.

UTICA,
October, 1820.

OVERSEERS OF
NORWICH
v.
OVERSEERS OF
NEW-BERLIN.

per, to the competency of which the defendants objected, but the Court admitted the evidence. The defendants below, offered to prove that the pauper owned land in the town of *New-Berlin.* The plaintiffs objected to the evidence, but the Court overruled the objection. A deed of conveyance of land to *Jones* was then read in evidence, the value of which land was about 1,000 dollars; but it did not appear whether *Jones* became the owner of the land before or after the division of the towns; the defendants proved that the wife and children of *Jones* maintained themselves on the land; but *Jones* himself was insane and a town charge. A bill of exceptions was tendered by the defendants to the opinion of the Court below.

*Jordan,* for the plaintiffs in error, contended, that *Jones,* in fact, was not a *pauper* when the town of *Norwich* was divided; and after the division, he acquired a settlement in the town of *New-Berlin.* (*Overseers of Washington* v. *Overseers of Stanford,* 3 *Johns. Rep.* 193.)

Again; admitting that the overseers of the poor of *Norwich,* for the time being, were bound by the contract signed by them in 1808, that contract was not binding on their successors in office. The overseers of the poor are not a body corporate, so that their successors in office can be sued in their own names, on a contract made by their predecessors in office. (*Shear* v. *Overseers of Hillsdale,* 13 *Johns. Rep.* 496. *Jackson* v. *Cory,* 8 *Johns. Rep.* 385.)

There was no evidence to support the general counts in the declaration, for it was not proved that *Jones* was a *pauper* of *N.* and therefore, no promise to pay for his maintenance could be implied.

*H. Bleecker,* contra. The proceedings of the supervisors and overseers of the two towns, under the act of the 3d of *April,* 1807, by which they found that *William Jones* was a pauper, is conclusive. They were authorized and directed by the act to ascertain who were paupers of *N.* and divide the poor between the two towns. The *pauper* was a charge on the town. The agreement entered into was not a *personal* contract, nor for the benefit of the individuals who

signed it. The overseers of the poor, having the funds of the town in their hands, for the maintenance of the poor, are liable, as the representatives and agents of the town, in their official capacity. The overseers of the poor, when they leave their office, are required by law, to pay over the poor monies to their successors in office. The funds pass into the hands of their successors, who, if not properly a corporation, are, nevertheless, liable, in respect to the funds placed in their hands for this object. But we contend that the overseers of the poor are to be considered a corporation, *sub modo.* Collective bodies of men acting under one general description, though not incorporated, yet in regard to certain rights, duties or trusts conferred upon them, not in their natural capacity, but in their public or official character, may be considered, so far, corporations, as to have succession, and the capacity of suing and being sued, in the right of the office they hold, and as far as their trust is concerned, distinct from their capacities as private individuals. Instances of these *quasi* corporations, are stated by Mr. *Kyd,* in the *introduction* to his *treatise on the law of Corporations,* (p. 9—19.) which are perfectly analogous to the present case, of public officers, known as overseers of the poor, who, *quoad* the funds entrusted to them for public purposes, must necessarily be deemed to have perpetual succession, and the power, therefore, of suing and being sued. *Coke,* (*Co. Litt.* 250 *a.*) says, " a corporation is a body to take in succession, framed (as to that capacity) by policy," &c. *Blackstone,* (1 *Bl. Com.* 472, 473.) after observing that the consent of the king, express or *implied,* is necessary to the erection of a corporation, mentions several sets of persons, as " churchwardens,"—" who, by common law, have ever been held corporations, *virtute officii ;* and this incorporation is so inseparably annexed to their offices, that we cannot frame a complete legal idea of any of these persons, but we must have, also, an idea of a corporation, capable to transmit their rights to their successors, at the same time." A grant of goods to the churchwardens of a parish, by that name, is good, though it is otherwise of a grant of land to them. (*Shep. Touch.* 236. 1 *Kyd on Corp. Intro.* 30.) In the case of *Denton* v. *Jackson,* (2 *Johns. Ch. Rep.* 325.) the *Chan-*

UTICA,
October, 1820.

OVERSEERS OF
NORWICH
*v.*
OVERSEERS OF
NEW-BERLIN.

UTICA,
October, 1820.

OVERSEERS OF
NORWICH
v.
OVERSEERS OF
NEW-BERLIN.

*cellor* considered it as settled, that persons may have corporate powers, *sub modo*, for certain specified purposes only ; and he instanced the *Loan Officers* of a county, and the *Supervisors* of a county, as being such corporations. So this Court, in *Jackson, ex dem. Lynch*, v. *Hartwell*, (8 *Johns. Rep.* 422.) held that the *Supervisors* of a county are a corporation for special purposes and with special powers, though they could not take a grant of land. There is a perfect analogy between these overseers and those various officers in *England*, who are regarded as *quasi* corporations; such as parsons, vicars, churchwardens, &c. Lord *Ellenborough*, (11 *East*, 586.) said, that he considered all appeals against orders of removal, though technically carried on in the names of the churchwardens and overseers of the respective parishes, as, in substance and effect, the suits of the parishioners themselves, who are to contribute to the expense of maintaining the paupers ; and that, therefore a parishioner could not be called upon by the adverse party to give evidence. (10 *East*, 402, 403.)

The fact of maintaining the pauper, and paying the money, was proved by the vouchers produced at the trial. The receipts were proved in the usual way. (*Phillips' Ev.* 170.)

PLATT, J. delivered the opinion of the Court. I think there is no foundation for either of the exceptions taken at the trial.

The written agreement was specially declared on ; and whether it was *obligatory* on the defendant below, or *not*, it was at least pertinent evidence under the general issue, and the exception to the relevancy of that agreement, could properly be taken advantage of only by demurrer, or by motion in arrest of judgment. But the record is before us on the writ of error ; and although the bill of exceptions was frivolous, yet the question fairly occurs, does the declaration show a right of action in the plaintiffs below ?

Without entering into the general question, whether overseers of the poor, in their *official* character, may sue and be sued, I am of opinion, that the declaration is substantially defective.

UTICA,
October, 1820.

OVERSEERS OF
NORWICH
v.
OVERSEERS OF
NEW-BERLIN.

The statute required the supervisors and overseers of the two towns, to " divide the money and poor" of the old town of *Norwich*, and expressly declared, that, " after the division, each of the towns shall maintain its own poor." Now it appears, that they divided the *money* only, and the six acknowledged paupers were not divided; on the contrary, those officers expressly agreed not to divide the paupers, but that they should be supported by the towns jointly, each contributing in proportion to their respective dividends of the money ; and that " these poor persons be disposed of according to the best advantage, by the poor-masters of the said towns, or either of the said towns."

Admitting the general proposition contended for, by the plaintiffs below, that overseers of the poor may, within the scope of their office, contract for the maintenance of the poor, so as to bind their successors ; yet I think it clear, that this contract was not within the sphere of their official duties, but expressly contrary to law. Instead of dividing the poor, in order that each town, by its own officers, might provide for its own paupers, the supervisors and overseers, in 1808, disobeyed the injunction of the statute ; and, in effect, formed a partnership between the two towns, for the future support of these paupers, with the preposterous stipulation, that they should " be disposed of" as the overseers of both towns, or *either* of the towns, deemed most advantageous. The law confines the charge and controul of paupers in every town, exclusively to the officers of the town to which the paupers belong. It is a power which cannot be delegated by the officers of one town, to those of another town, nor can it be exercised by the officers of several towns in common.

On this ground, therefore, (which was not touched in the argument,) I am of opinion that the judgment ought to be reversed.

*Judgment reversed.*