ALBANY,
Feb. 1824.

JANSEN
v.
OSTRANDER.

---

JANSEN, Supervisor of Kingston, *against* OSTRANDER
AND OTHERS.

In debt on bond, variance between bond and oyer cannot be objected on the trial;

DEBT on bond, tried at the *Ulster* Circuit, (1821) before his Honor (the late) Mr. Justice VAN NESS.

The declaration set forth a bond in the penalty of $11873, 02, executed by the defendant, *Ostrander,* as collector of the

town of *Kingston* in *Ulster* county, for the year 1818, and the other defendants as his sureties, to *Thomas Van Gaasbeck*, supervisor of that town, pursuant to the first section of the act relative to the duties and privileges of towns, (2 *R. L.* 126) and averred that the plaintiff was, at the time of the commencement of this suit, the successor of *Van Gaasbeck*, as supervisor of *Kingston*. The declaration then set forth the condition of the bond, and proceeded with an assignment of breaches, and the necessary averments, to shew that the defendant, *Ostrander*, had forfeited the bond by not accounting for the whole tax, contained in the warrant delivered to him, pursuant to the 4th section of the act for the assessment and collection of taxes. (2 *R. L.* 511.)

In assigning breaches, the declaration averred the delivery of the warrant to *Ostrander*, as collector ; by which he was commanded to collect, &c. ; and then proceeded thus : " and

ALBANY, Feb. 1824.

JANSEN
v.
OSTRANDER.

but the defendant should demur.

To a declaration in debt on a bond setting out the condition and breach, *nil debet* is not a good plea ; but if pleaded and not demurred to, it puts in issue every material fact in the declaration.

In debt on a town collector's bond, the plaintiff in assigning breaches, set out the tax warrant, and averred that the collector was thereby required to pay " a large sum, to wit, $5935, 59, to the county treasurer; but the warrant produced, required the payment of $4530,15 ; *held*, no material variance.

When an averment is material, adding *videlicet* does not make it immaterial, but the want of a *videlicet* will sometimes make an averment material, which would not otherwise be so.

This rule applied to the particular case.

The court will not allow a formal objection to defeat an action, but will suffer the party to amend at any stage of the cause.

*It seems*, amendments of clerical errors may be allowed by a judge who tries the cause at the circuit.

Payment to the state, by a county treasurer, of the amount due to him from a collector, will not enure to the benefit of the latter, but an action may be still maintained on his bond.

A supervisor of a town, in discharging his duties as such, acts not in his natural, but in his official capacity ; and is, *pro tanto*, a corporation.

He has the capacity of suing and being sued, so far as his trust is concerned.

The right to sue is incident to his office, and passes to his successor.

Within this rule, the successor of a supervisor, who has taken a collector's bond under the statute, (2 *R. L.* 126,) may sue upon it in his own name.

If, in a suit brought by or against a supervisor, as such, he fail in his action, execution goes against him personally ; and his remedy is against the town.

Remedies by and against corporations *sub modo* considered.

*It seems*, that their rights and liabilities pass to the successor, whether they arise from torts or from contracts, and whether the latter be simple, or by specialty.

Distinction between one who has a corporate capacity for his own benefit; and when he acts in trust for others.

*It seems*, that a penalty, incurred under the 12th section of the act relative to the duties and privileges of towns, (1 *R. L.* 131,) while one is supervisor, but not sued for by him, may be collected in the name of his successor.

out of the monies so collected, he, the said *Ostrander*, was, by the said warrant, required to pay a large sum, to wit, the sum of 5935 dollars and 59 cents, to the treasurer of the said county of *Ulster*, &c."

Plea, *nil debent*.

On the trial, the plaintiff produced the bond declared on, and which was set forth in the *nisi prius* record ; but the defendants' counsel objected to its being received as evidence, on the ground that the oyer, which had been delivered to the defendant, was of a bond in the penalty of $11823,02, instead of the sum mentioned in the declaration.

The plaintiff also produced the collector's warrant, which was likewise objected to, on the ground that it required the collector to pay to the county treasurer $4530,15, instead of the sum mentioned in the declaration.

It appeared in evidence, that the sum for which the collector was in arrear to the county treasurer, and for which this action was brought, had been paid by the latter to the state treasurer ; and this was also made a ground of objection to the plaintiff's recovery.

It was also objected, that the plaintiff could not maintain the action in his own name ; but that it should have been brought in the name of *Van Gaasbeck*, his predecessor, the obligee named in the bond.

A verdict was taken for the plaintiff, subject to the opinion of the Court, upon these points. The defendants had also given notice of a motion in arrest of judgment, upon the last ground ; and the argument was now heard, as well upon that motion, as the motion for judgment, upon the points reserved.

*T. J. Oakley,* for the plaintiff. As to the variance between the bond declared upon, and the one produced, he cited *James* v. *Walruth*, (8 *John.* 410,) and *Henry* v. *Cleland*, (14 *John.* 400,) and remarked, that the only mode in which the defendants could have availed themselves of the variance, was to have craved oyer and demurred. Besides, the objection cannot be taken upon this issue. The defendants should have pleaded *non est factum.*

ALBANY,
Feb. 1824.

JANSEN
v.
OSTRANDER.

. As to the variance between the amount stated in the breach, and the warrant, he said the warrant was set forth as a matter between the collector and the county treasurer. True, where a deed or other instrument is pleaded, as the foundation of the action, any variance, whether material or not, is fatal ; but the warrant is mere inducement to the action, in relation to which the rule is otherwise. (1 *Chit. Pl.* 108. 1 *Ld. Raym.* 816.) Here the sum is laid under a *scilicet.* (4 *John.* 457.)

As to the payment by the county treasurer, the money is no less due, because he has accounted to the state. Such accounting can never affect this question, which is between the supervisor and collector. (*Laws, sess.* 38, *ch.* 29.)

The action is properly brought in the name of *Van Gaasbeck's* successor. The statute, (2 *R. L.* 131, *s.* 12) recognizes the new supervisor as the successor of the old, and in *Overseers of Pittstown* v. *Overseers of Plattsburgh,* (18 *John.* 418) this Court declare, that " when a publick office is instituted by the legislature, an implied authority is conferred on the officer to bring all suits as incident to his office, which the proper and faithful discharge of the duties of his office requires." The office is a corporation *pro tanto.* This was holden, in the case last cited, as to overseers of the poor and the board of supervisors of a county.

*C. H. Ruggles,* for the defendants. Whenever a party sets forth an instrument in pleading, it must be proved as laid. The plea of *nil debet* denies every material fact which it is necessary for the plaintiff to establish. The bond given in evidence varied from the one declared on, in the penalty, which in the former was $11823, and in the latter $11873.

[*Oakley.* The gentleman must be mistaken. In all the cases handed by me to the Court, and in my own case, no such variance appears. If there was a variance of the kind, it was a clerical error ; or more probably it is a mere fancy of the counsel, from the difficulty of distinguishing between the words *twenty* and *seventy,* when written. If there

ALBANY,
Feb. 1824.

JANSEN
v.
OSTRANDER.

,was really a mistake, the Court will suffer an amendment at this or any other stage in the suit.]

[WOODWORTH, J. Amendments of mere clerical 'mistakes, like this, are allowed by the Court at any time ; and there have been instances where a single Judge, at the Circuit, has allowed them. The subject was much considered by the late Judges, and they all agreed that the practice was proper. In *England*, the practice is still more indulgent, and allows such amendments at any time in vacation, under the direction of a single Judge.] (*a*)

*Ruggles.* This action cannot be maintained in the name of. *Jansen.* If overseers of the poor are considered corporations, in the case cited on the other side, it is as corporations aggregate. But if the office of supervisor is a corporation, it does not follow that this action is maintainable. Church-wardens are a corporation, in *England ;* yet they cannot take an obligation to them and their successors. (1 *Kyd on Corporations,* 31.) It will not be contended that a supervisor is a corporation aggregate ; and if sole, his goods and chattels are holden in his private capacity. They go to his personal representatives on his death—not to his successor. (*Co. Litt.* 46 b. 1 *Bl. Com.* 504. 1 *Kyd on Corp.* 76.)(*b*) Suppose we succeed in our defence, the judgment and execution must go against the supervisor personally—not as a corporation. By the 1 *R. L.* 131, cited on the other side, a supervisor is authorized to sue for penalties due to the town ; and the legislature thought it necessary to insert a provision, that the suit should not abate by his death ; clearly shewing the corporate power to have been wanting at the common law. The statute under which this bond was executed, directs it to be given to the supervisor alone, without naming his successor ; and the statute, (*sess.* 44, *ch.* 194) puts the question beyond a doubt. It provides, in relation to

(*a*) Vid. ante, 131-2, and note (*c*) and (*d*.)

(*b*) Yet *Kyd* makes a distinction, that where the corporation sole holds such goods or chattels in trust for another, there they shall go to the successor— otherwise, where the holding is for its own benefit. (1 *Kyd on Corp.* 77.)

this very action, that " it shall not be abated or discontinued by any vacancy or change in the office of the supervisor, but such suit may be continued and prosecuted to effect by his successors in office, in the name of the supervisor who commenced the same ; and in case of his death, a suit may be brought upon the bond in the name of his personal representatives." This statute was passed by reason of the common law principle, that a chose in action cannot be assigned. If the suit would go to the successor of the supervisor, on his death, where was the necessity of a statute continuing the action to his personal representatives ?

*Oakley*, in reply. The consequence of success, in this motion to arrest the judgment, will be merely to turn the town round to the name of *Van Gaasbeck*, instead of *Jansen*. I do not contend that here is a corporation sole, but merely that the supervisor is clothed with qualified corporate powers, in relation to all his publick duties. *Van Gaasbeck's* power over the subject matter is gone. He has no duties to perform, and can incur no liabilities. The only distinction between the county board, and the individual supervisor, is, that the former are a corporation, *sub modo*, for county, and the latter for town business. · I am not aware that a church-warden, in *England*, has any power, as such, to take a bond at all ; but it is otherwise of a supervisor.

The statutory provisions, authorizing the continuance of certain actions by the successor or personal representatives of the supervisor, do not militate against the idea of their being corporations, but are rather in favour of it. The doubt was, not that his successor might collect the bond or penalty in his own name, but how the suit should proceed in case of his death pending the action.

WOODWORTH, J. The declaration alleges that the bond was in the sum of $11873,02. The bond produced at the trial was for the same amount. It does not appear that there is any variance in the *nisi prius* record. The plea is *nil debet*. The defendants were too late to take advantage of the variance between the bond and oyer delivered ; they

might have craved oyer, demurred specially, and availed themselves of the objection. (*James* v. *Walruth*, 8 *John.* 410.)

It was contended on the argument, that the plea of *nil debet* was not a denial of the bond. To this it may be answered, that such a plea to a bond, setting out the condition and breach, is bad, and may be demurred to ; but if this is omitted, the plaintiff must prove every allegation in his declaration. (1 *Chitty*, 477. 2 *Saund.* 187 *a. n.* 2. 5 *Esp.* *Rep.* 38.) It was therefore incumbent on the plaintiff, under these pleadings, to prove the bond.

It is also objected, that there is a variance between the amount of the collector's warrant, set out in the declaration, and the warrant produced in evidence. In the declaration, the sum is alleged under a *videlicet*, and is stated at $5935,-59 ; the warrant produced is for $4530,15. It is well settled, that when an averment is material, the addition of a *videlicet*, does not render it immaterial, but it is as much traversable, as if the *videlicet* had not been inserted. (*Greenwood* v. *Barret*, 6 *T. R.* 460, 1 *Chitty*, 308.) But the want of a *videlicet* will, in some cases, make an averment material, that would not otherwise be so ; therefore, where a party does not mean to be concluded by a precise sum, or day stated, he ought to plead it under a *videlicet* ; if he does not, he will be bound to prove the exact sum or day laid, it being a settled distinction, that where any thing which is not material is laid under a *videlicet*, the party is not concluded by it ; but he is, where there is no *videlicet*. (*Symonds* v. *Knox*, 3 *T. R.* 68. 2 *Saund.* 291, *n.* 1.) In the case before us, it was not material to state the amount of the warrant ; had that been omitted, there was enough to apprize the defendants of the ground upon which a recovery was sought.

But having stated the sum, the *videlicet* is added, to guard against the effect of a variance. If it were otherwise, this Court would not suffer a formal objection to defeat the action, but allow the party to amend.

Payment by the treasurer of the county, of the amount due to the state, cannot enure to the benefit of the defend-

ants. The collector was bound to make payment to the treasurer. With his duty in relation to the state, the collector had no connexion or concern. It is enough that he has not collected and paid over the amount of his warrant. The material question is, whether the action can be maintained in the name of the present plaintiff, the successor in office of *Thomas Van Gaasbeck*, to whom the bond was given.

The act relative to the duties and privileges of towns (1 *R. L.* 126,) requires, that " every collector execute to the supervisor of the town, a bond, in double the amount of the taxes to be collected, conditioned for the due and faithful execution of the duties of his office ; that if the bond shall become forfeited, it shall be the duty of the treasurer of the county to give notice to the supervisor, with whom the bond is lodged, of the amount due from the collector ; and the said supervisor shall cause the bond to be put in suit, and shall be entitled to recover thereon the amount due ; which sum, when recovered, shall, by such supervisor, be applied in the the same manner, and to the same purposes, to which such collector ought to have applied the same." *This section* does not contemplate a change in the office ; it is founded on the supposition, that the supervisor, who had taken the bond, remained in office when the default of the collector happened. By the 12th section, (*p.* 131) the freeholders and inhabitants of each town are authorized to impose penalties in certain cases, to be recovered by the supervisor of the town where the offence shall be committed; and it is provided that no such action shall be abated or discontinued by the death or expiration of the office of the supervisor. If a penalty accrued during the continuance of A in office, and no prosecution, I apprehend the successor might bring an action in his own name within the meaning of the act. A suit thus commenced, might be continued and prosecuted to effect, though, before the termination, a successor be appointed. In this respect the statute confers the right incident to a corporation.

It is admitted, that the section does not provide for this case. It is adverted to, to shew an express grant of corpo-

rate powers to a certain extent, and that the legislature did
not intend, that such officers, having many and important
duties to perform for the town and counties they represented,
should stand on the ground of private individuals, as to the
remedies by action, in matters relating to their offices. The
act (44 *sess. ch.* 195, 5 *vol.* 177,) declares, that no suit
brought by a supervisor, on a collector's bond, shall be aba-
ted or discontinued, by any vacancy or change in the office,
but may be continued and prosecuted to effect, by the suc-
cessor in office, in the name of the supervisor, who commen-
ced the same; and in case of the death of such supervi-
sor, a suit may be brought and prosecuted upon the bond,
in the name of his personal representatives. The first
part of this section applies, where the predecessor in of-
fice had commenced a suit. Here the suit is instituted in the
first instance by the successor. The last clause in the act
seems to proceed on the supposition, that the suit must be in
the name of the supervisor to whom the bond was given.
If the doctrine contended for by the plaintiff is well founded,
the latter provision in the act was altogether useless. If a
suit can be maintained in the name of the successor, it be-
comes immaterial, whether the predecessor is living or dead.
The Legislature may have considered this a doubtful ques-
tion, and therefore allowed a suit in the name of the personal
representatives. That this was the inducement, I think
highly probable. If it be granted, that the bond stands on the
same footing as one to a private citizen, the representatives,
of course, would be the proper parties. Whether a necessi-
ty for this provision existed or not, it is quite clear, that, by al-
lowing the representatives to sue, in case of death, the super-
visor who had taken the bond, if living, was believed to be
the person entitled to institute the action.

It will be admitted, that this action cannot be sustain-
ed in the name of the plaintiff, unless the statute has
expressly conferred the right, or the power to sue
is incident to the office, on the principle that, *pro tan-
to,* he is endued with a corporate capacity. The
former is not pretended; the latter I think is supported
by the decisions of this Court. The supervisor of a town
is elected annually, and holds his office until a successor is

appointed. He has various duties to perform as the representative of the town; he has other duties relating to the county, when acting as one of the board of supervisors. In *Jackson* v. *Hartwell*, (8 *John.* 425) the Court considered the supervisors of a county a corporation for special purposes, and with special powers only, and consequently, in those particulars, having the capacities incident to a corporation. The same principle applies to the supervisor of a town, in the discharge of the duties of his office. He acts, not in his natural capacity, but in his publick or official character; and may be considered a corporation, and having the capacity of suing and being sued, in right of the office he holds, so far as his trust is concerned. It seems a necessary power to enable the officer to execute the trust. It is highly expedient, that the successor should have the power of bringing all suits appertaining to the office, which might have been instituted by the predecessor. Without it, great embarrassment may take place. To enforce the rights of the town, resort must be had to the predecessor, who has no longer any concern with the office, and may be disposed to throw impediments in the way of a prosecution. In case of his death, recourse must be had to his executors or administrators. If there are none, the successor must first take measures to have an administrator appointed, with many other difficulties, growing out of the doctrine which disallows a corporate capacity to this description of officers.

These considerations, it is true, will not confer a power, but they go strongly to show the reasonableness of that construction, which gives the power of suing as incident to the office. The power is derived by implication from the act creating the office, and prescribing its duties. The principle was recognized in the case of *the Overseers of Pittstown* v. *Plattsburgh*, (18 *John.* 418.) They were considered as the publick agents and trustees of the town in respect to their poor. It was held that they must necessarily, without express authority from the legislature, possess a capacity to sue, commensurate with their publick trusts and duties; that when a publick office is instituted by the legislature, an implied authority is conferred on the officer, to bring all suits as incident to his office, which

ALBANY,
Feb. 1824.

JANSEN
v.
OSTRANDER.

the proper and faithful discharge of its duties require. It was also held, that although the statute gives the right to sue in certain cases, it by no means proves that the power would not have existed, independently of the statute. Instances of *quasi* corporations are stated by *Kyd* (*p.* 9—19) which have a strong analogy to the present case. In *Denton* v. *Jackson*, (2 *John. Ch.* 325) the Chancellor considered that persons may have corporate powers, *sub modo*, and for certain specified purposes only; and that the several towns in this state are legal communities or bodies politick for certain purposes.

Here is a security taken for the benefit of the town. The collector is in default a large sum for taxes, not paid according to his warrant; the legal agent claims the right to recover on the security taken. The statute intended to give the supervisor, in office when the default happened, the right to prosecute. I have already observed that a change in the office, at the time the default happened, seems not to have been within the view of the legislature, because it directs, that after notice to the supervisor with whom the bond is lodged, he shall cause a suit to be instituted, and the sum recovered shall, by such supervisor, be applied as the collector ought to have done. If the supervisor, to whom the bond is given, is not in office when the default happens, the statute cannot literally be complied with. The present case is an illustration. *Van Gaas-beck*, although the person with whom the bond was lodged, is not the person intended, to prosecute the suit, or to receive the money collected, and apply it. He has no right to apply it; nor is he bound to perform this duty—it appertains to his successor. The construction of the act, in this respect, is, that the supervisor, with whom the bond is lodged, provided he remain in office, shall prosecute and apply the money. If there happen to be a change, then there is no express provision, saying that the successor shall perform the duty; but it clearly results from the nature of the office, which has charge of the interest of the town, in respect to securities from collectors, in the absence of any express delegation of power to the successor, that he must be considered the person to per-

form what the statute enjoined on his predecessor, had the default happened during his continuance in office. *Van Gaasbeck*, then, having no interest or concern in this matter, the plaintiff must put the bond in suit. It is no valid objection, that the bond was not taken in his name. It was enough that it was taken by his predecessor in his official capacity, as the agent of the town, and for their benefit. Under the statute, and as incident to the office, it passed to the successor, and is suable by him. It is, in judgment of law, payable to the supervisor of the town, who is entitled to an action. It is as available, as a bond given to a corporation aggregate, which is not affected by a change of members.

I am aware, that questions, perhaps, of difficulty may arise on many points relating to the extent and exercise of powers by persons who are only, *sub modo*, a corporation. The remedy is the same as that given to a corporate body. In the manner of pursuing it, it is in many respects, like an action by an individual. If he fail, as plaintiff, he is liable to costs out of his individual property. If a recovery be had against him as defendant, he is liable in like manner. These incidents would distinguish the proceedings, in form, from a suit in behalf of a corporation, and may operate, in some cases, inconveniently upon the officer; but they arise from the peculiar character with which the law has clothed him. If he is thereby exposed to inconvenience, and obliged to make advances, his remedy is certain against the town, while acting discreetly and within the scope of his authority.

This principle has been applied to overseers of the poor—they are a corporation *sub modo*. In the case of *Norwich* v. *New-Berlin*, (18 *John*. 382,) an action of assumpsit was brought on an agreement, dated in 1808, and signed by the supervisor and overseers of the poor, then in office. The suit was against the successors. The question, whether they were suable in their official capacity, was ably argued by the counsel for the defendant in error. The Court waived the decision of this point, and observed that, admitting the general proposition, that overseers of the

poor may, within the scope of their office, contract for the maintenance of the poor so as to bind their successors, yet it was clear the contract, in that case, was not within the sphere of their official duties.   In the case of *Pittstown* v. *Plattsburgh*, (15 *John.* 436, and 18 *John.* 407,) it will be seen that the plaintiffs commenced a special action on the case against the defendants, who were overseers, when an order of removal was quashed.   It was intended to recover expenses, incurred for supporting a pauper unjustly thrown upon *Pittstown*, by an order of removal, obtained by the procurement of *Moore & Buck*, overseers of *Plattsburgh*. *Hunter* succeeded *Buck*—the suit was against *Moore & Hunter* ; so that the question was fairly presented, whether the ·successor was liable, and is, I think, expressly decided. The doctrine laid down by the Court disposes of that point, and sanctions the form of action.   The decision of the cause against the plaintiffs rested on other grounds.

I think it will be conceded, that if the cause of action, resting on a promise by parol, or liability arising from the neglect of a duty, which the law requires to be performed, is binding on the successor, it equally follows, that such is the consequence, when the action is founded on a writing or specialty.   The principle equally applies.   It is well known that doubts have been entertained on this question by our Courts.   The case of *Pittstown* and *Plattsburgh* may be considered the first judicial disposition of the subject. Various acts of the legislature, giving a right to officers possessing corporate powers, *sub modo*, to sue in certain cases, have undoubtedly arisen from the same source, of which the act of 1821, before referred to, is a striking instance.

This act is the only remaining impediment in the way of the plaintiff.   It has already been shewn, that giving a right to sue in certain cases, does not negative the existence of the power, as incident to the office ; but this act is not of that character.   It gives the right of suing to the personal representatives of the supervisor, to whom the bond was given. Now, if *Van Gaasbeck* were dead, this right in his representatives is incompatible with the right to sue, claimed by the plaintiff ; for two actions could not be sustained by different

parties on the same instrument, against an individual. He is answerable to one or the other; and as the right of the representatives is expressly conferred by statute, in the given case, it would prevail. But we are not required to apply the provision in the statute beyond the case specified, and that has not occurred. *Van Gaasbeck* is living. Whether the right to sue is in him or the plaintiff, cannot be affected by this act. That question must be decided by the principles before laid down, which, in my view, sustain the action. I am, therefore, of opinion, that the plaintiff is entitled to judgment.

SUTHERLAND, J. concurred.

SAVAGE, Ch. J. The first question necessary to be considered is, whether this action can be maintained by the present plaintiff.

The statutes relating to the subject are the following: By the act relative to the duties and privileges of towns, (2 *N. R. L.* 126,) it is required of every collector, before he enters upon the duties of his office, to execute to the supervisor of the town a bond, with sureties, in double the amount of the tax to be collected, conditioned for the faithful discharge of his duty : the bond to be lodged with the supervisor, and put in suit on notice, from the county treasurer, of the collector's default ; and the money, when collected, to be applied, as the collector ought to have applied it.

By the act, (*sess.* 38, *ch.* 29, *s.* 5,) the towns are made responsible for the default of their several collectors ; and the amount is to be added to the tax of the next year. By the act, (*sess.* 41, *ch.* 251) the supervisor is required to file the bond in the county clerk's office, and it then becomes a lien on the real estate of the obligors. By the act of 1821, (*sess.* 44, *ch.* 195) it is provided, that no suit brought on a collector's bond, shall abate, by reason of a vacancy or change in the office of supervisor; but it shall be prosecuted by his successors in the name of the supervisor, who commenced the suit; and, in case of his death, a suit may be brought and prosecuted upon the bond in the name of his personal representatives.

ALBANY,
Feb. 1824.

JANSEN
v.
OSTRANDER.

From an examination of the act relative to towns, it will be seen that there are a variety of persons, in each of the towns, clothed with certain powers for certain specifick purposes. They are to be considered corporations *pro tanto*, and clothed with corporate powers and capacities, so far as is necessary to the execution of the trust confided to them. In *Jackson* v. *Hartwell*, (8 *John.* 425) this Court recognized that doctrine, and mentioned instances under our own laws, and others referred to by *Kyd*, in his treatise on the law of corporations. In *Overseers of Pittstown.* v. *Overseers of Plattsburgh*, this Court recognize the same law, and instance the overseers of the poor ; and it is there said, that " when a publick office is instituted by the legislature, an implied authority is conferred on the officer, to bring all suits as incident to his office, which the proper and faithful discharge of the duties of his office require." It would seem, therefore, that the supervisor possesses certain corporate powers and capacities, at least so far as to enable him to perform his official duties, and might have prosecuted the collector's bond, even had the statute been silent on that point.

It is, however, objected on the part of the defendants, that the supervisor, if endued with corporate powers, is a corporation sole, which cannot take goods and chattels in succession ; that they do not, on his death, go to the successor, but the personal representatives ; and they cite *Kyd on Corporations*, *Intro. p.* 1, *Co. Litt.* 46 *b.* where it is said, " If a lease for years be made to a bishop, and his successors, yet his executors and administrators shall have it, *in auter droit ;* for, regularly, no chattel shall go in succession, in case of a sole corporation, no more than if a lease be made to a man and his heirs, it can go to his heirs." The same doctrine is laid down in *Fulwood's case*, (4 *Co.* 65,) where, however, the Court held a recognizance good to the chamberlain of *London* and his successors, upon a custom ; for that he was a corporation by custom ; and the same custom which created him, made him a corporation in succession, to this special purpose ; but that a bishop, parson, &c. can only take an obligation in their private, and not in their corporate capacity.

Corporations sole are of two kinds : the one when the person has a corporate capacity for his own benefit ; the other when he acts only as trustee for the benefit of others. Of the former kind, *Kyd* instances the king, bishops, parsons, &c. ; of the other, the most familiar instance, says the same author, is the chamberlain of the city of *London,* who may take a recognizance to himself and successors, in trust for the orphans.

The true reason, therefore, of the distinction between the case of the bishop, and the chamberlain, is not the custom alleged, but the fact that the former takes obligations in his private capacity, and the latter in his corporate capacity. So, in the case now before the Court, *Van Gaasbeck* took the bond in question, in his corporate capacity, as supervisor of the town, for the security and indemnity of the town, which was responsible for the default of its collector ; and but for the act of 1821, his personal representatives would certainly have no right to prosecute. Without that act, they would not be entitled to the custody of the bond, nor any right to control it. Independent of this act, therefore, the plaintiff, as successor of *Van Gaasbeck,* being in office when the default happened, and receiving the proper notice from the county treasurer, had, as an incident to his office, every necessary power to enable him to perform the duties enjoined on him by the act. He had authority to prosecute. The act does not take from the officer any authority which he had, but the legislature, apprehending that suits would abate, on the death of the supervisor, or the election of a new one, intended to provide for those cases a cumulative remedy. In case of the death of a supervisor, it might be necessary to prosecute the bond, in the name of his personal representatives, during a vacancy in the office.

The variance between the warrant described and that produced, should not prejudice the plaintiff. The precise amount of the sum was not material ; and being laid with a *videlicet,* it may be disregarded, and a warrant for a different sum may be received in evidence. There was no variance between the declaration and oyer ; and if otherwise, it could only be taken advantage of by placing it on the record.

That the county treasurer thought proper to pay the state treasurer the amount due from the town of *Kingston*, is certainly no excuse for the collector. It was his duty to collect the money, and pay it to the county treasurer, and whether he ever paid it to the state, was a question which, in no way concerned the collector. I am of opinion, therefore, that the plaintiff must have judgment.

Judgment for the plaintiff.(*c*)

(*c*) Vid. *Todd et al.*'v.*Birdsall*, ante, 260 and note (*a*) to that case, 261 to 264. As it is not only curious but instructive to see how variously the powers of *quasi* corporations may be applied, I add the extract from *Kyd on Corporations*, referred to in the argument. It is in 1 *Kyd*, 29 to 32.

" There are also some corporations which have a corporate capacity only to some particular purpose. Thus the church-wardens may take goods, in succession, to the use of the parishioners. (20 *Ed.* 4. 2 *Bro. Corp.* 60.) So, if a gift of chattels be made to the parishioners, it is good, and the church-wardens shall have an action for them, the gift being considered to be for the use of the church. (37 *H.* 6, 30. *Bro. Corpor.* 73.) They have the custody of the ornaments of the church, as the plate and bells, and an action of trespass has been maintained by them against the parson, for breaking the bells; though the parson pleaded that he and others purchased the bells, with their own money, and put them up ; because, when put up, they were consecrated to the church. (Vid. 11 *H.* 4, 12.) So if a man take the organs out of the church, they may have an action of trespass for it; for the organs belong to the parishioners, and not to the parson. (1 *Roll.* 393.) So the church-wardens, by the assent of the parishioners, may take a ruinous bell, and deliver it to a bell-founder, and agree that he shall have a certain sum for casting it, on which the bell-founder may retain the bell till he be paid ; and this agreement shall not excuse the church-wardens in a writ of account brought against them by their successors ; because the parishioners are a corporation for the disposal of such personal things as belong to the church. (*Inter Methold et Winn*, 1 *Roll.* 393. *M.* 37. 38 *El. B. R.*) So, with the like consent of the parishioners, they may take stones belonging to the church, and empower a builder, with part of them, to repair a ruinous window—retaining the residue to himself, in satisfaction of his labour and expenses. (*id. ibid.*) So they may have an appeal of robbery, or an action of trespass for those things of which they have the custody, and count to the damage of the parishioners. (Vid. *Finch's Law*, 178, *and the authorities there cited.* 1 *Leon.* 177. *Comb* 417. 1 *Vent.* 89.) But they cannot give a release of them, for that is to the disadvantage of the church ; and if they do, the parish may choose new church-wardens, who shall have an account

aganst them. (*Finch*, 179, &c.) But if a feoffment be made to the use
of the church-wardens, it is void; for they have no capacity for such a
purpose. So a devise, or a gift of land to the parishioners, is not good;
nor can the church-wardens prescribe to have lands to them and their suc-
cessors, for they are not a corporation to have lands   (*Vid.* 37 *H.* 6, 30.
*Bro. Corpor.* 77.  12 *H.* 7, 27.  *Bro. Corpor.* 84.  17 *H.* 7, 27 b.  1 *Roll.*
393)  Neither does their capacity extend to take an obligation to them
and their successors. (20 *Ed* 4.  *Bro. Co·por.* 60.)  Neither is a gift,
by them, of their goods in their custody good, without the assent of the
sidemen or vestry.  (1 *Roll.* 39 ·.)  And the corporate capacity is in the
church-wardens, jointly, and therefore the one, without the other, cannot
give away the goods of the church, nor release costs to which they are en-
titled   (*Cro. Jac* 234.)  But though the corporate capacity of church-
wardens be in general thus limited, yet, by letters patent, they may, in par-
ticular cases, have a more enlarged capacity.  Thus, in the case of *St.*
*Saviour's*, *Southwark*, it was granted, by letters patent, before the 33. of
*Elizabeth*, that the parishioners, or the greater number of them, should an-
nually elect two church-wardens; and that they and their successors
should be a corporation, with capacity to take, purchase and sell.  So the
King granted that the parishioners of *Wallingford* should be a corporation
to bargain and sell; and, in consequence, they, or the greater number,
were accustomed to make leases and estates. (*Lane*, 21. 10 *Co.* 66.) And
by custom in some places, as in *London*, the parson and church-wardens are
a corporation to purchase lands, and to demise them. (*Cro. Jac.* 532.) So
by the statute, (9 *Geo.* 1, *ch.* 7) the church-wardens and overseers of the
poor are enabled to purchase a work-house for the use of the poor."