By the Court.—Monell, J.
It is claimed in support of the demurrer in this case, that the defendants have not capacity to be sued.
The act creating the Metropolitan Fire Department does not, in terms, declare it to be a body politic or corporate ; and although it has express power to sue, it has no express capacity to be sued ; and as the action is against the defendants by their denominational title, they must be shown to be a corporation defacto or sub ■modo, or it cannot be sustained.
There are numerous instances of collective bodies of men who are invested with corporate attributes sub modo. Some have a corporate capacity only for a particular specified end,—such as supervisors of towns and counties, loan officers and commissioners of loans, overseers of the poor, commissioners of common schools and of highways, trustees of schools, &c. (2 Kent, 278). .Each of these bodies, it is now provided by statute (2 Rev. Stat., 473, §§ 92, 95, 96), may sue and be sued, and •some of them are made bodies corporate (1 Id., 337, 364). At common law every parish and town was a •corporation for local necessities, and every collective body of men, who, although not bodies politic or corpouate, with the general powers of corporations, yet, having a corporate capacity for particular specified ends, .are considered as quasi corporations, with limited powers co-extensive with the duties imposed upon them by :statute.
Prior to the Revised Statutes, there were no inccrpo■rating acts for towns and counties. The whole article to which I have above referred, say the revisers, is new, ■and was reported by them in consequence of decision s which had been made, that towns and counties could mot take or hold real estate; These decisions having been made before the statute, were founded, of course, upon the common law powers of the various bodies which had claimed some corporate capacity. Thus, in *355 Jackson v. Cory (8 Johns., 385) it was held that a “ county ” could not take title to land ; and in Jackson v. Hartwell (Id., 422), that supervisors were also incapable of taking title. But it was admitted that they were corporations for certain special purposes ; and this is plainly recognized in North Hempstead v. Hempstead (2 Wend., 109, 134) ; Pittstown v. Plattsburgh (18 Johns., 418); Jansen v. Ostrander (1 Cow., 670) ; Grant v. Fancher (5 Id., 309). In Pittstown y. Plattsburgh the court say, “ When a public office is instituted by the legislature, an implied authority is conferred on the officer, to bring all su ts, as incident to his office, which the proper and faithful discharge of the duties of his office require.” And in Todd v. Birdsall (1 Cow., 260), it was held that an action would lie against overseers of the poor, and that legal liabilities incurred by predecessors in office, ought to devolve upon the successors. It was incident to the office, which, in that respect, might be viewed in the nature of a corporation. In a note to this case are collected all the prior decisions. The same general doctrine is sustained in Inhabitants of School District in Rumford v. Wood (13 Mass., 192), and in Levy Court v. Coroner (2 Wall., 501).
From the cases cited, it will be seen that bodies created by the legislature have an incidental capacity to sue and be sued, independently of any express power, and for such purposes are regarded as corporations sub modo.
By the act in question, the cities of New York and Brooklyn-are constituted and united into a district, and known as the Metropolitan Fire District of the State of New York. The governor and the senate are authorized to appoint four citizens, residents of the district, to be “ Metropolitan Fire Commissioners,” who shall form a Metropolitan Fire Department, to take and have, as provided in the act, control and management of all officers, men, propertv, measures and action for the prevention and extinguishment of fires within the said district, to be organized as therein provided, and be known *356 "by the name of the “Metropolitan Fire Department.” The commissioners are to hold office two, four, six and eight years respectively, and at the expiration of each term a successor shall "be appointed. Provision is made for filling vacancies, and for the removal of the commissioners. They are authorized to organize the “Metropolitan Fire Department ” by electing one of their number as president, and appointing a secretary. When so organized, they shall possess and have all the power and authority conferred upon or possessed by any and all officers of the fire department of the city of New York. The specific powers conferred by the act upon the “Metropolitan Fire Department” are, to possess and exercise fully and exclusively all the powers, and to perform all the duties, for the government, management, maintenance and direction of the fire department of the city of New York, and the premises and property thereof, which, at the time of the organization of the department, were possessed by or were under the control of the board and officers of the fire department of said city, or the officers or employees of said city.
The department is given sole and exclusive power and authority to extinguish fires, and to provide supplies, horses, tools, implements and apparatus, and fire telegraphs, and to provide suitable locations for the same, and to buy, sell, construct, repair, and have the care of the same, and to take all such action in the premises as may be reasonably necessary and proper.
The department is given full and exclusive power for the government, management, maintenance and direction of the buildings and premises, and property and appurtenances, and all apparatus, &c., which were under the charge and control of the city officers, which property is transferred to the keeping and custody of the “ Metropolitan Fire Department.”
The commissioners are directed to provide such offices and business accommodations as are necessary for the transaction of its business; to adopt a common seal and direct its use : and are authorized, in the name of *357 its president, to institute and maintain suits and proceedings (and may pay costs, expenses, and judgments therein), for the enforcement of its rights and contracts, and for the protection, possession and maintenance of the property under the control of the department; and may also sue for, and have the exclusive right to recover, for the benefit of the department, the fines and penalties which may be enforced.
The mode of raising money for the support of the department is by estimates made by the commissioners and comptroller and mayor of the city of New York, convened as a board of estimate, which estimate, when approved by the board of supervisors of the county of New York,- shall be levied and collected by the board of Supervisors, by taxation of the real and personal estate, subject to taxation, within the county of New York. The amount so to be raised is directed to be deposited with the treasurer of the State as a fund to the credit of the department, and drawn by check or warrant of the treasurer of the department, as ordered by the department. Provision is made for the appointment of a treasurer, who is the fiscal officer of the department, and authorized, by order of the commissioners, to disburse all moneys ; and he is required to deposit all funds in a bank to be designated by the commissioners.
The commissioners are given' power to select a chief and assistant engineers, and as many officers, clerks, firemen, and such apparatus, as may be necessary, and to remove the same.
By an amendment of the act, in 1867 (Laws of 1867, ch. 408), the salaries of the members and employees of the department are fixed, and directed to be paid by the commissioners out.of any moneys in their possession; and in case of a deficiency, the comptroller of the city of New York is required to deposit with the treasurer of the State to the credit of the commissioners, upon their requisition, such additional sums as may be necessary, which additional sum is afterwards to be collected by taxation.
*358 The act creates a fire district, composed of the cities of New York and Brooklyn. It is not made subservient or responsible to any local authority in either city. Its officers and agents are appointed by a power above all ¡local authority, and are held amenable only to the governor and the legislature. The department is required to make report to the governor, and its funds are kept in the treasury of the State.
It cannot be pretended that the city or the county of New York has any power or control over the department whatever; and the only duty which the city or county owes to the department is, to raise by. taxation the moneys required for its support, which moneys are required to be paid into, and kept by, the treasurer of the State, and are wholly under the control of the department.
Here, tlmn, is a department, created over two otherwise wholly independent districts, having most extensive powers, which it can exercise without interference from those cities, or either of them. Would not such a department, without any express right, have had, at the common law, a power to sue, incidental to a discharge of the duties devolving upon it ? If so, and the cases cited establish it, it would also be regarded as a quasi corporation, with such powers and subject to such liabilities as belong to such bodies.
It was urged on behalf of the department that it had no property whatever, and, therefore, a judgment could not be collected. I know it has been said in some of the cases (Lyon v. Adams, 4 Serg. & R., 443 ; Gardner v. Board of Health of New York, 10 N. Y. [6 Seld.], 409) that one of the essentials of a qtcasi corporation was property or funds owned by it; yet if that essential only was wanting, it might be doubted if it would be sufficient to defeat an action. It does not follow that supervisors, overseers, trustees, &c., who previous to the statute were held to be corporations sub modo, had property or funds ; and in those cases there was no way of paying or collecting, except through the power of *359 taxation. Nor is there now, in respect to many of the corporate bodies, any property which could be subjected to levy and sale.
But however that may be, an examination of the statute will show that the Metropolitan Fire Department has property and funds, independently of the ample provision which is made for raising money by taxation for salaries, rents, &c., and “ generally for the purposes of this act and such general and contingent expenses ’ "" as may be necessary.
The authority to buy and sell necessarily implies a power to hold, and to take and give title. There is nothing in the act which in express terms or by any fair implication requires the title to property to be taken to, or in the name of the city. The old department was expressly empowered to take and hold real and personal property, and no part of the present act forbids the present department from also holding it.
We were referred to section 17 ; but that section relates to the property then or theretofore in use by the old department, which it is declared shall remain the property of the mayor, &c. It does not include, or in terms affect, any property which the commissioners may subsequently acquire. That ownership in the city was intended to be confined to the property on hand, is to be presumed from the direction in section 18, to pay the proceeds of the sale of property not required by the commissioners, into the treasury of the “city,” whereas all other funds of the department are directed to be paid to the treasurer of the “State.” The department has, in addition, all fines and penalties imposed by Laws of 1862, ch. 356, and also such as may be imposed by itself, which fines are held for the benefit of the fund of the department.
The property, therefore, of the department, both its apparatus and its funds, can be subjected to levy, or otherwise reached by execution ; and such fact furnishes an answer to the objection that without property there can be no quasi corporation. In Gardner v. Board of *360 Health {ubi supra), the defendants were held not to he a corporation. The court say, “It has no succession, no seal, and no funds that it was organized by the city corporation, and might be changed at the pleasure of the common council.
The three ingredients, all, or some of which, at least,' are required to constitute a corporation, are a succession, a seal and funds The act creating the defendants is unlimited in duration, and provides for a succession, which, according to Blackstone (2 Black. Com., 430), is the mode by which one set of persons, members of a corporation aggregate, acquire the rights of another set which preceded them. It also has a seal, and, as I think I have shown, has funds and property ; thus bringing it within all the definitions of a quasi, if not an actual corporation.
I do not think, however, that it is necessary, in order to find a capacity in the defendants to be sued, to let the decision rest entirely upon its being a quasi corporation.
There is enough in the act, when considered in connection with other statutes, which, it seems to me, in express terms renders it capable of being sued.
The act creating the department declares (section 4) that, when organized, the commissioners shall possess and have all the power and authority conferred upon or possessed by any and all officers of the “Fire Department of the city of Hew York,” and the department itself is empowered (section 5) and directed to possess and exercise fully and exclusively, “all the powers, and to perform all the duties for the government, management, maintenance and direction of the fire department of the city of Hew York, and the premises and property thereof, which, at the time of the organization of said department, were possessed by or under the control of the boards and officers of the fire department of said city.”
The first act creating a five department in the*city of Hew York was passed in 1798 (see Valentine's Laws, *361 p. 748), by which certain persons were constituted a body polit'c in fact and in name, by the name of the “Fire Department of the city of New York,” and was made capable in law of sueing and being sued.
The depar'm nt was limited in its duration to the year 1818. In 1816 it was continued until the year 1838, and in 1831 continued until the year 1860, and again in 1850 to the year 1880, unless sooner altered, modified or repealed by the legislature.
6 The only “fire department” to which reference is made in the present act, is the department created under the act of 1798, which, as has been seen, was in force at the time of the enactment of the present law. In the various acts subsequent to 1798, the legislature lias fully recognized and continued the existence of that act. The act of 1813 merely empowers the common council to appoint the firemen, and the persons so appointed are denominated “the firemen of the city of New York.” The act of 1817 makes the firemen members of the “ fire department.” That of 1819 authorizes the department to recover fines, &c. The same in 1820. The department is also recognized in the acts of 1824, 1841, 1854, 1855 and 1861.
The repealing clause in the second act,is of “all acts and parts of acts inconsistent with this act.” But it is further provided that “ the present fire department shall continue until the organization of the new department.”
It is not material to consider whether the act of 1798 is or is not repealed, for it seems quite clear that the scope, effect and intent of the present act was to usurp and absorb all the powers, duties and- functions of the old fire department, so that, if not in terms, or by necessary const quence, repealed, it has become functus officio.
It has been held (Fire Department of New York v. Kip, 10 Wend., 236), and the statute declared, that the old “fire department ” was a corporation, capable of being sued ; and if all the powers of that corporation *362 have been given to the Metropolitan Fire Department, there can be no room for doubt that such department is also a corporation, and, as such, capable of being’ sued.
In addition to the transfer of the powers of the old department before referred to, the act directs (section 17) that all real estate, fire apparatus, &c., theretofore in use by the firemen and fire department, shall be transferred to the keeping and custody of the Metropolitan Fire Department, for the use of the department, and directs the commissioners (section 18) to dispose of so much of said property as may not be required.
It will thus be seen that the present law. not only transfers "all the powers of the old department, but erects the new department into an independent and exclusive corporation, with all needed powers, and it seems to me that necessarily it annuls the old fire department.
It was said in support of this action that, if the defendants a.re not capable of being sued, persons dealing with them, or affected by their acts, would be remediless. Certainly very large and extensive powers are given to the department. It may buy property to an unlimited extent, contract and incur debts and obligations, commit trespasses and do wrongs, and unless held to be responsible as a corporation, there is no remedy.
In answer to this it was replied that che city is liable ; that the department, being an agent of the city, the latter must assume its debts, and respond for its unlawful acts. I cannot agree to this. The relation of principal and agent cannot be implied, and the act does not create it. The city of New York is not a party to the act creating this new department, and cannot be presumed to have accepted or assented to any part of it, and its corporate rights and powers are not to be affected by the acts of a commission in whose appointment it had no voice, unless so affected by the express terms of the act.
It is enough, however, to say, that the act does not *363 make the department an agent of the city, nor render the city liable for the contracts or acts of the department ; and as I understand it, the decision of Appleton v. Water Commissioners of New York (2 Hill, 432), was put upon the ground, among others, that the city, and not the commissioners, were liable, and the act creating the commissioners justified such decision.
Whether, therefore, we regard the defendants as a corporation sub modo, and invested with all the powers and capacities of an actual corporation, or as a collect - ive body, succeeding, under legislative authority, to the powers and capacities of the old fire department of the city of New York, in either aspect it is capable of being sued, and may be rendered liable in an action for injuries resulting from negligence of its agents or servants, or from the faulty, defective, or insufficient character of the apparatus used by it in extinguishing fires (Proprietors of Southampton v. Local Board of Health, 8 Ell. & B., 801 ; Mersey Dock Trustees v. Gibbs, 1 Ho. of Lords, 93).
In the case against the trustees of the Mersey docks, the action was by the owners of a ship’s cargo for injury by reason of the negligence of the trustees, in not clearing the docks, and it was held that, if the defendants had the means of knowing the state of the dock, and were negligently ignorant of it, they were liable.
And in the case against the local board of health (supra) an action was maintained for negligence and want of due care in the construction and management of a public sewer.
There is no hardship, injustice, or wrong in holding the defendants in this case liable for injuries which have been received through their own negligence, or through the negligence of those who are acting by their orders and under their authority; for, to exempt them from such liability, would deprive the injured parties of all means of redress.
In the language of Lord W estbury (in the case of the Mersey Docks, supra) “it would be a very unrea *364 sonable and a very mischievous thing, if, in the case oi corporations dealing with the public or with individuals, such corporations should, by any conduct of theirs in respect to property committed to their care, give a right of action to individuals, that such individuals should be deprived of the ordinary right of resorting for a remedy against the body doing or authorizing those acts, and should be driven to seek a remedy against the individual corporators, whose decision or order, in the name of the corporation, may have led to the mischief complained of.”
My conclusion is, that the action was rightly brought against the defendants, eo nomine, and that a sufficient cause of action is stated in the complaint.
The order appealed from should be reversed with costs, with leave to the defendants to apply to the special term for permission to withdraw the demurrer, and to answer the complaint.
Freedman and McCunn, JJ., concurred.