IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1877.

---

## THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF UNION
### ADS. GUSTAVUS W. RADER.

1. A statute, to be constitutional, must embrace but one object, but the comprehension of the mere incidents of such object does not infringe this requirement.
2. A statute which is entitled as relating to "streets," cannot embrace a power to lay out parks, but such power being severable from the body of the act, will not vitiate the entire law, but is itself to be discarded.
3. A statute was entitled, "An act in relation to streets in Union township, in Union county," its object being to incorporate commissioners to lay out and take charge of the streets of a certain district; *held*, that such statute was unconstitutional, as it did not express its object in its title.
4. A statute is valid that requires a township to pay a debt that is morally, but not legally, due from it to an individual, for work done upon the public streets.
5. A statute relating to making and keeping up the streets of a district, is a public law, which will be noticed by the courts.

VOL. X.                          2 L

The declaration contained a count, stating, that by an act of the legislature of this state, entitled "An act in relation to streets in Union township, in Union county," approved March 29th, 1871, the inhabitants of a certain part of Union township, in the county of Union, therein described, were created a body politic and corporate, to be called the "South-easterly Road District of the township of Union, in the county of Union," for the purpose of laying out, opening and improving streets, roads, highways and public parks within the said boundaries, &c.; that said board should consist of five persons; that said act provided for and regulated the making of improvements under said act, by said commissioners, and for such purpose the rights, powers, authorities, privileges and advantages conferred by an act entitled "An act to revise and amend the charter of the city of Elizabeth," approved March 4th, 1863, and the several supplements thereto, upon the city council, as to the opening and improving of streets, highways and parks, &c., providing for the payment and collection of the costs and expenses thereof, were conferred on the said commissioners, who were authorized to have, use and exercise all such powers, subject to the regulations and provisions of said act, so far as the same were not modified by said act of 1871. The count then alleged that, on the 1st of April, 1872, the said board of commissioners "were indebted to the plaintiff in the sum of $4500, for goods, wares and merchandise before that time sold and delivered by the plaintiffs to the said commissioners, at their request, for improvements made under said act; and in like sum, for work and labor before that time done and performed, and materials furnished by the plaintiff to the said commissioners, at their request, for improvements made under said act, &c., &c.; and in a like sum, for so much money then and there found to be due from the said commissioners to the plaintiff, for improvements made under said act, on an account stated between them.

The count then further alleged, that by an act of the legislature of New Jersey, entitled "An act to repeal an act en-

titled 'An act in relation to streets in Union township, in Union county,' approved March 29th, 1871," approved April 1st, 1872, (which said act last mentioned was the same act first above mentioned,) the said first mentioned act was repealed, and in said repealing act it was enacted as follows:

"That this repeal of said act shall not in any way affect or impair any legal contracts which the board of commissioners of public roads of the southeasterly road district of the township of Union, in the county of Union, have made, and which may remain unexecuted, in whole or in part, at the time of the passage of this act, or any indebtedness contracted by said commissioners for improvements made under said act; but the township committee of the said township of Union, and their successors, shall have power, and they are hereby authorized, to compromise and settle with the contractors, if possible, on such reasonable terms as, in their judgment, they may deem for the best interests of the district; or, if a settlement cannot be made, then to carry out and complete all such legal contracts which the said commissioners of public roads have heretofore made, and which remain unexecuted, in whole or in part, at the time of the passage of this act, and to pay all just debts contracted by said commissioners, for improvements under said act," &c.

The count concluded with an allegation, that the obligation to pay the moneys claimed was, by force of this act, transferred to the township committee of the township of Union, and the same being unpaid and often demanded, hence this suit, &c.

To this declaration there was a general demurrer.

Argued at June Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *Williamson, Man & Spencer.*

For the defendants, *W. J. Magie.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The plaintiff alleges that he did certain work on the public streets in the township of Union, county of Union, under a contract made with him by the road board incorporated in the name of " The Southeasterly Road District of the township of Union, in the county of Union," by the act of 29th of March, 1871, and that the obligation to pay this debt was transferred to the present defendant, the township committee of the township of Union, by the act which repeals the previous one, and which latter act was approved 1st of April, 1872.    It is obvious that the plaintiff's right of action rests on one or both of these legislative enactments, and that if both of them are inoperative, such action must fail as against this demurrer. Both of these laws are called in question in this connection, and although the same objection is made to the two, still it will tend to perspicuity to treat them in turn.    It should, however, be premised, that although this case has been before this court on previous occasions, the questions now to be disposed of have, for the first time, been placed before us for consideration.

The exception now taken to these statutes is, that they are in conflict with Placitum 3, of Section 7, of Article IV., of the constitution of this state, which is in these words, viz., " To avoid improper influences, which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title."

The purpose of this provision is plainly two-fold ; first, to ensure a separate consideration for every subject presented for legislative action ; second, to ensure a conspicuous declaration of such purpose.    By the former of these requirements, every subject is made to stand on its own merits, unaffected by " improper influences " which might result from connecting it with other measures having no proper relation to it ; and, by the latter, a notice is provided, so that the public, or such part of it as may be interested, may receive a reasonable inti-

mation of the matters under legislative consideration. These are the intents which the court, in its application of this clause of the constitution, is called upon to further, and, as far as may be practicable, to carry into effect. Let us see, then, how these two acts now *sub judice* will bear these tests.

The first of these laws was approved on the 29th of March, 1871, and it is entitled thus: "An act in relation to streets in Union township, in Union county." By its first section it sets off, by designated boundaries, 'a certain part of Union township, and then declares that the inhabitants of such part —to use its own language—"shall be, and they are hereby created, a body politic and corporate, to be called the 'South-easterly Road District of the township of Union, in the county of Union,' for the purpose of laying out, opening and improving streets, roads, highways and public parks within the said boundaries, and for exercising the rights, powers and franchises conferred by this act, and shall be capable of suing and being sued, and of having and using a corporate seal." The next section directs that there shall be a board, to consist of five persons, to be called commissioners of public roads, whose duty it is made to exercise the powers therein conferred, and to whom is given exclusive control over the roads and highways within such district. In subsequent sections this board is clothed with full and exclusive authority "to lay out streets, avenues and public parks within the said district"—to enter upon and take lands for these purposes; the necessary machinery for assessing damages and benefits being provided. In a special section, power is given to connect any sewer in this district with any sewer to be built in the city of Elizabeth, and the act concludes with a provision for the annual election of the members of the board of commissioners. These are the substantial contents of the act in question.

There are two objections under this head, in the brief of the counsel of the defendants, that seem to me to be especially worthy of consideration and criticism.

The first is, that the act in question relates to more objects than one, some of which are not expressed in the title. The

object of legislation is described to be streets in Union township, and in the body of the act power is given to construct a sewer and make public parks, and it is said such improvements are things by themselves, and have no relation to the general legislative project. With regard to the first of these specifications, I am inclined to think that the objection is not well founded. The making of a sewer may be said to be comprehended in a description purporting to relate to streets. A street can be, and usually is, devoted in part to this use, and it would, therefore, seem that the introduction of this provision does not violate the unity of statutory object that is required to prevail. The principles laid down in the well-considered case of *State, ex rel. Walter,* v. *Town of Union,* 4 *Vroom* 351, appear fully to countenance this feature of the present act.

But the second point, I think, is more intractable, and cannot be brought into subjection to the same rule. The making and control of streets is a thing entirely different from the making of parks; the two have no connection, and neither is an adjunct to the other, and it is impossible, as it seems to me, to logically hold that a description of one embraces both. The rule that there must be a substantial unity in the statutable object as indicated by the title, is, in this instance, obviously violated. But I do not, on this account, conclude, as counsel appears to have done, that by reason of this illegality this entire statute is to be treated as a nullity. Such is not the legal rule, and no such consequence is denounced by the constitutional article in question, which merely prohibits, without defining the effect of, its infraction. It will answer every purpose of law, and of public policy, to declare, in such cases as the one now under advisement, the unlawful superaddition to the declared object of the statute to be inoperative and void. This can always be done when the objectionable feature stands by itself, and is separable, as a distinct thing, from the body of the act, and there is no reason to suppose that the portion thus eliminated constituted an essential motive to the enactment of the law. This I understand

to be the usual rule of law regulating this subject, and, by its application to this case, it will be only the power to make parks that will be affected by the present objection, the body of the act being beyond its scope. This question was the subject of judicial consideration in Alabama, and was determined in a manner that is in harmony with the view just expressed. The case to which I refer is that of *Walker* v. *State*, reported in 49 *Ala.* 329, the statute then in question being entitled "An act to restrict the sale of personal property in certain cases," and which, in its body, contained a provision making punishable as a misdemeanor the wilful destruction of personal property on which there was an unsatisfied lien, and the result reached by the court was, that the constitutional provision that required but one subject to be embraced in a statute, was violated, but that, notwithstanding this illegality, the whole act was not void, but only the unlawful interpolations, they being severable from the other parts of the law.

But the other point on this same subject, raised by counsel, has a wider scope, and, therefore, is of a more serious character, such point being, that the title of this statute does not truly express the object of the legislation which it embodies.

After a careful consideration of this subject, I have concluded that this exception is well taken, for I have failed to discover what effect is to be given to this constitutional provision, if it is not, in this case, to have the effect of annulling this law. It has been already said that the purpose of the provision requiring the object of the proposed law to be expressed in its title, is to give notice of and publicity to the proposed legislation, and such purpose would be thoroughly frustrated, if a rule should be sanctioned having a scope sufficiently wide to embrace and to validate the present act. The title of this act is, "An act in relation to streets in Union township, Union county," and it will, on a moment's thought, be perceived how general such an allusion to the legislative purpose is. It is true, that it may be difficult to indicate, by a formula, how specialized the title of a statute must be; but

it is not difficult to conclude that it must mean something in the way of being a notice of what is doing. Unless it does this, it can answer no useful end. It is not enough that it embraces the legislative purpose—it must express it; and where the language is too general, it will accomplish the former, but not the latter. Thus, a law entitled " An act for a certain purpose," would embrace any subject, but would express none, and, consequently, it would not stand the constitutional test. And so, a law entitled " An act in relation to silk goods," would not indicate, in the faintest outline, a purpose to incorporate a body for the manufacture of such fabrics. Such titles would be idle and inefficacious for every purpose. And yet the latter example of a nugatory title is not unlike the one prefixed to the act under consideration. It is described as being in relation to streets in Union township, but its immediate purpose is to create a corporaton to take charge of such streets. These streets, before the passage of this law, were in the hands of the officers of the township; the new scheme was to supersede such supervision, and to transfer it to a corporate board organized for that purpose. This was an important change, most materially affecting the property and personal rights of the inhabitants of the district embraced in the law; and yet it is certain the title of this statute would not have conveyed to such persons any intelligible intimation of the project in contemplation. This statute relates to the streets only because the organization it establishes is to have the control of them, but the object of the act is the establishment of such organization. Such object not being expressed in the title, I think the entire act is void

But this resolution, with respect to this first point, is not conclusive of the issue on this demurrer. The questions touching the legality and effect of the act of the 1st of April, 1872, remain to be disposed of.

This statute is entitled " An act to repeal an act entitled ' An act in relation to streets in Union township, in Union county,' approved March 29th, 1877," and it effects the pur-

pose thus indicated, by repealing the act already criticised. In its subsequent sections, it provides that such repeal shall not affect or impair any legal contracts made under the original act, and it authorizes and empowers the township committee of the township of Union, and their successors, to compromise and settle, if possible, with such contractors, and "to pay all just debts contracted by said commissioners for improvements under said act;" and to enable the township committee to execute these trusts and powers, such committee is "authorized, to borrow such sums of money as may be necessary for that purpose, and to provide for the payment of said sums so borrowed, by the issue of the bonds of said township." And it further enacts that the expenses for improvements may be assessed and collected in the mode appointed in the act repealed, and makes valid assessments already laid.

It is argued that this repealing act is void by reason of the same imperfection which has been found exists in the primary law, that is to say, that its title does not fairly express its object. The specification under this exception is, that the body of the act comprises objects not expressed in the title to the law.

I do not concur in this view. The objects which, it is insisted, are not indicated in the title, are the powers conferred on the township committee of Union, looking to the payment of debts due under the repealed statute. But I think such powers and their incidents are the necessary concomitants and dependencies of the repeal of this act. A provision for the payment of the existing debts was an inseparable accompaniment of a repealing law, for such a law could not be legally passed without some such provision being made. Nor could there be any doubt as to who would be responsible for such debts. The road district was a part of the township, and when, therefore, the organization of the district was abolished, the township organization revived, and it followed almost as a matter of course, that the latter would fall heir to the obligations of the former. All these things

seem to follow in train on the repeal of this law, and, therefore, it was not necessary to indicate them in the title of the repealing law. If we look at this matter practically, we will see, I think, that in this instance the constitutional principle in question was not, in substance, infringed. This work upon the public streets, which forms the ground of this action, had been done; the inhabitants of this locality had the benefit of such work, and were liable, by the express terms of the original act, to pay for it; when, consequently, they were notified by the title of the second law, that the former one would be repealed, they could not reasonably draw the conclusion that they were to be exonerated from those debts which had theretofore been incurred in their favor; nor could they have been surprised to find that they, as inhabitants of the township, were not relieved from the burthen that had rested on a portion of them as inhabitants of the road district. This clause of the constitution does not require the methods by which the object of the statute is to be effected, to be stated in its title; and the liquidation of the debts of a corporation whose charter is repealed, is an essential part of the process of the repeal of its charter. It may be true that this charging the entire township with the expense of the work done on the roads of a particular district, is a departure from the ordinary practice in this state, but whether such a departure shall occur is a matter for legislative discretion. I can have no doubt that the legislature could formally have declared that certain roads to be made in a township, should, contrary to the usual custom, be borne by the body of the township; and, granting this power, it seems impossible to deny the right to transfer to such corporation the burthen of paying for roads which may have been theretofore made in a particular district of such township.

This second statute is not, in my opinion, obnoxious to the charge of unconstitutionality.

Having reached this stage of the inquiry, the next question which arises is, whether this last-mentioned law of 1872 has

the effect to validate contracts made, and debts incurred, by force of the original act, which it has repealed.

It has already been declared that this original act is void. All contracts, therefore, entered into by its authority, are to be regarded as unwarranted by any law, and, as originally, unenforceable; so that the distinct inquiry is, whether it is competent for the legislature to legalize claims of this character, having, in law, no inherent force.

But whatever doubts may still exist with respect to the control which the legislature may exert, in some departments, over political corporations, it appears to me that a measure of authority over such institutions must be conceded to reside in the law-making power, that will fully justify the conclusion that the obligation to pay the claims now in controversy could be legitimately imposed on these defendants. The moneys now sued for must, on this argument, be taken to be honestly due; for the township, represented by the defendants, is now in the enjoyment, in the shape of improved streets, of the results of the plaintiff's labor, and, consequently, it is manifest that the district so benefited should remunerate the plaintiff for his services. Antecedently, then, to the enactment of this second law, a duty existed in a portion of the inhabitants of this township to pay this claim; and it has been repeatedly decided by courts of the highest authority, that the legislature have the undoubted right to compel a corporation of this character to pay a debt which, although not legally enforceable, carries with it the force of a moral obligation. Such a power grows out of the fact that these corporations are altogether public in their nature and uses, and that, in the language of Chief Justice Marshall, their " whole interests and franchises are the exclusive property and domain of the government itself." The contract out of which the debt in question issued, was palpably *ultra vires*, as it was made by a body having no legal existence; but it was nevertheless an object beneficial to the locality now sought to be burthened for its payment, and which object could, beyond all question, have been legislatively authorized.

I have found no case which, under the given circumstances, has denied the right of the law-makers, under their power of taxation, to compel the payment of a claim thus originating. The decisions to this effect will be found collected in the text books.  *Cooley on Const. Lim.* (3d ed.) 379 ; *Dillon on Mun. Corp.*, § 44.  And the following adjudications of this court recognize the rule of law as thus propounded :  *State, ex rel. Walter,* v. *Town of Union,* 4 *Vroom* 350 ; *State, Copeland, pros.,* v. *Village of Passaic,* 7 *Id.* 382 ; *Cleveland* v. *Board of Finance, &c.,* 9 *Id.* 259.

The result is, that this act of the legislature having recognized this debt and directed it to be paid, such claim has passed from a mere moral obligation into a suable demand.

There are other exceptions, but they relate to matters of form and procedure.

In the first place, it is insisted that this suit should have been brought against the corporation whose charter has been rescinded, and not against this township committee, such officers not being a corporate body.  If this is the true view to be taken of the legal position of the plaintiff, it is obvious his claim must be lost, inasmuch as this road board, according to the opinion just expressed on the point, never has had a legal existence.  But as it is the repealing act that legalizes the cause of the present action, we must look to that law in order to ascertain who it is that has been made responsible to the plaintiff.  The statute requires the payment of this debt, but it does not require, unless it may be by implication, the inhabitants of the township—that is, the incorporated township—to make such payment.  On the contrary, in express terms, the burthen of payment is put on the township committee and their successors.  It is this committee that is required to pay the debts which had been contracted by the road commissioners for improvements, and it is this same committee that is to borrow money and issue the bonds of the township, so as to be enabled to meet the obligation of settling these claims.  In the entire act, there is nowhere any duty imposed on the incorporated township, but everything in pursuance of it is to be performed by the committee and

Rader v. Township of Union.

their successors. By force of these conditions, it seems to me that it is entirely agreeable with legal rules to hold that this committee and its successors has been made a *quasi* corporate body, under an obligation to perform certain functions, and clothed with a capacity of being sued for their non-performance by a party sustaining an injury. The attribution of such a capacity to this committee, seems imperatively required, inasmuch since by no other method can a suit for the recovery of the present claim be harmonized with the ordinary rules of procedure in legal actions. In a proceeding against the incorporated township, an obligation to make payment of this demand could not be shown in the pleading, for, as has been already stated, it is not the township that is enjoined to settle these debts ; and the township has no more control over the committee, in this matter, than the plaintiff himself, or any other creditor has. Nor is it unusual to invest public functionaries with corporate powers, *sub modo*, and for a few specified purposes. *Angell & Ames on Corp.* (3d ed.) 19. In *Jansen* v. *Ostrander*, 1 *Cow.* 670, it was held that a supervisor of a town, in discharging his duties as such, acted not in his natural, but in his official capacity, and was, *pro tanto*, a corporation ; and the decision in *Overseers of Pittstown* v. *Overseers of Plattsburgh*, 18 *Johns.* 407, was of the same complexion, the doctrine declared being, that the overseers of the poor were possessed, without any express authority from the legislature, of a capacity to sue as a corporate body, co-extensive with their public trusts and duties. Other illustrations of this doctrine will be found by reference to the cases cited by the text writers. 1 *Dillon on Mun. Corp.*, § 22 ; 1 *Kyd on Corp.* 29 ; 2 *Kent's Com.* 221.

The duty of settling with the class of creditors in which the plaintiff is comprised, having been cast by the statute on this township committee and its successors, and such duty attaching to this body in its official capacity, in my judgment, it is the better conclusion to regard the present action as being sustainable in its present form.

With respect to the further objection, that on the admission

that the cause of action exists, the declaration does not sufficiently disclose it, my examination of the pleadings leads me to the conclusion that such objection should not be sustained. The argument on this head is founded on the assumption that the act of 1871, and its repealing act, being private in their nature, cannot be, *ex officio*, noticed by the court. But this assumption is not, in my opinion, warranted. The original act related to the making of public roads and streets within an extensive district. Such works are not local in their character, and the law authorizing their construction forms a part of a system whereby these improvements are provided throughout the territorial limits of the state. Sometimes roads are to be laid and maintained by the officers of townships; sometimes by the officers of counties or cities; and, at other times, by special commissions. But, in all these instances, the act to be done is substantially the same; highways are established, not for the use of the people of a certain locality, but for the use of the citizens at large. Such works are, in every respect, of a public character, and, I think, all laws for their building or maintaining should be regarded as public. This view appears to me to be theoretically sustainable, as well as to be supported by a considerable line of adjudications, which I will cite without comment. *Ross* v. *Reddick*, 1 *Scam.* 73; *Fauntleroy* v. *Hannibal*, 1 *Dill.* 118; *Briggs* v. *Whipple*, 7 *Vt.* 19; *West* v. *Blake*, 4 *Blackf.* 234.

But it is not necessary further to pursue this subject, for, I think, the first count of this declaration does show, with sufficient certainty and definiteness, the ground of this action. It substantially avers the creation of a road board by the act of 1871, that was thereby authorized to lay out streets; that the debt sued for accrued for work done in making the improvements under this law; and that, by the act of 1872, the defendants were directed to pay debts which had thus been incurred; and these facts appear to lay a cause of action in the plaintiff.

Let judgment be entered on this demurrer, for the plaintiff.