THE CONSOLIDATED TRACTION COMPANY, PLAINTIFF IN ERROR, v. JOHN B. CHENOWITH, DEFENDANT IN ERROR.*

1. Where the trial judge charged that it was the duty of the managers of a car operated by electric motors at a high rate of speed to give audible signals of the approach of the car, the non-performance of which duty was evidence of negligence, which, if the proximate cause of the injury complained of was actionable—*Held*, that the charge was free from error.

2. Where from the proofs at a trial two conclusions of fact can reasonably be reached, one of which will justify the plaintiff's recovery, the trial court cannot direct a verdict for the defendant.

3. The trial court is not obliged, though specially requested to do so, to apply a legal principle, which it clearly states to the jury, to conditions of fact postulated by the defendant's counsel, particularly where such conditions do not include all the circumstances which should influence the conclusion of the jury.

On error to the Supreme Court. For opinion of Supreme Court, see 29 *Vroom* 416.

For the plaintiff in error, *Sherrerd Depue.*

For the defendant in error, *Howard W. Hayes.*

The opinion of the court was delivered by

THE CHANCELLOR. Error is assigned, in the first place, upon the refusal of the trial court to nonsuit the plaintiff below. The proofs exhibited that the plaintiff was the driver of a hook and ladder truck belonging to the Newark fire department, which was drawn by two horses; that the distance from the front end of the pole to which the horses were harnessed to the rear end of the ladders, extending back of the truck, was forty-eight feet, and the weight of the truck, with its load, was about seven thousand pounds; that the driver's seat upon the truck was directly over the whiffle-

---

* This case should have been printed in volume 30, but was inadvertently omitted.—REP.

tree, about ten feet from the end of the pole; that under him was an alarm-gong which habitually was rung by him while the truck was in motion; that the truck was steered in front by the horses, guided by the driver, and in the rear by a tillerman who was seated back of the rear axle of the truck, at a wheel which was used by him to guide the back truck wheels; that the truck-house was upon the westerly side of Plane street, one hundred and fifty feet south of the intersection of Plane street with Orange street; that Plane street runs north and south, and Orange street runs east and west; that about one hundred and fifty feet west of Plane street, Orange street curves to the south, so that from the southerly side of its intersection with Plane street a person must advance into Orange street to see westerly beyond the commencement of the curve; that the roadway in Plane street is thirty feet wide, and the roadway in Orange street is thirty-nine feet wide; that the sidewalk in Orange street is about thirteen feet wide; that in the Orange street roadway two railway tracks of the defendant company are constructed, upon which the company operates cars by electric motors; that Orange street, where it crosses Plane street, is upon a grade that rises to the west and descends to the east; that on the morning of the 18th of November, 1894, at about eight o'clock, an alarm of fire was given, and the truck in question was driven by the plaintiff below from its house into Plane street, and thence northerly to Orange street, it being the driver's intention to turn westerly and go up the last-named street; that the horses were driven slowly out of the truck-house, and until the truck was straightened in Plane street, and then they were put to a trot to Orange street, slowing up, however, before they reached Orange street to enable two firemen to get on the truck, as it moved, between the front and back wheels; that the truck-gong was repeatedly rung as the vehicle approached Orange street; that on the southwest corner of Orange and Plane street, around which it was proposed to turn the truck, there was erected a three or four story brick building; that this building so

obstructed the view up Orange street from Plane street that
the driver of a vehicle in the latter street could not see the
approach of an electric car from the west until he should
nearly reach the crosswalks at the intersection of the streets;
that the plaintiff below, just after he crossed the crosswalk,
and when his horses were about upon the eastbound railway
track, saw one of the defendant's cars approaching Plane street
from the west, at a high rate of speed, estimated at twelve
or fifteen miles an hour, about one hundred and twenty-
eight feet from him; that, as the momentum of his heavy
truck was too great to enable him to stop before getting on
the track, he immediately urged his horses to a higher speed
and pulled them to the right to give the tillerman more room
to swing the back part of the truck out of the way of the
car, but before the truck had cleared the track it was struck
by the electric car and overturned, and the plaintiff was
thrown from his seat and severely and permanently injured;
that the electric car was thirty-two feet in length, rested upon
two trucks, each having four wheels, and was very heavy;
that it was running rapidly as stated, upon a descending
grade; that it was equipped with double motors and brakes
and alarm-gongs, and its motive machinery could be reversed,
in case of necessity, so that when running upon a level and
at a reasonable rate of speed, it could be stopped within its
own length, and that its gong was not rung to indicate its
approach towards Plane street.

The motion for nonsuit was based upon the insistence that
the plaintiff below was guilty of contributory negligence.
The argument in its favor is that the plaintiff knew the
locality, the width of the streets, the existence of the electric
railway and the frequency of its cars, the location of the
building upon the corner of Plane and Orange streets, and
its obstruction of a view of the defendant's tracks to the
west, and, by that knowledge, was chargeable with the reali-
zation that the intersection was a place of danger, the approach
to which called for great care and caution upon his part, but
that notwithstanding this realization, he drove past the corner

so fast that he could not check the momentum given to the truck until that vehicle was upon the defendant's track. It is insisted, as I understand the argument, that he should have so controlled the speed of his horses that he could have crawled forward to the defendant's track and have been able, at any moment that he should discern one of its cars rounding the curve in Orange street, to stop the truck and wait for the car to check its speed and either stop or pass him. The trial court thought that it was a question for the jury whether, under all the circumstances presented, the driver of the truck used ordinary care and prudence in giving notice by the clang of his gong, and then moving as he did upon the defendant's tracks.

The evidence admits the finding of these facts: That the plaintiff looked for a car when he reached Orange street—that is, at the building line; that the distance from that line to the eastbound railway track is about twenty-five feet; that the curve in Orange street commences about one hundred and fifty feet west of Plane street, and that the plaintiff did not see the car until his horses' heads were about at the eastbound car track, and then the car was one hundred and twenty-eight feet distant. When he saw the car, being ten feet back of the horses' heads, he had gone some fifteen feet beyond the building line of Orange street. Taking his rate of speed at five miles an hour, he would run about seven feet each second and reach the place from which he first saw the car two seconds after he left the building line. In the same two seconds the car, running fifteen miles an hour, or twenty-two feet a second, must have gone forty-four feet—that is, from a point one hundred and seventy-two feet west of Plane street or some distance around the curve, where, in all probability, it could not have been seen from the building line. When the driver had reached the track he had gone too far to stop, but it does not appear that he could not have stopped if he had seen the car when he was at the building line. Was it negligence for him, when he reached Orange street and did not see a car, to go on? Had he not a right, in the exercise

of reasonable prudence and judgment, to assume that if a car should round the curve and approach him it would be so in control of its motorman that it could be sufficiently checked within one hundred and twenty-five or one hundred and fifty feet, for which distance the motorman could see him coming upon the street, to afford him the seven seconds or less he would need to cross the tracks? It is deemed that the determination of these questions was involved in a decision of the question whether the defendant was guilty of contributory negligence, and that the determination of them was matter properly left to the consideration of the jury, and, therefore, that the nonsuit was rightly refused.

In the next place, it is assigned as error that the trial judge charged the jury " that it was the duty of the defendant to give audible signals of the approach of its cars, and that non-performance of this duty was evidence of negligence on the part of the defendant, and that if the evidence satisfied the jury that a failure to give signals was the proximate cause of the injury complained of, that was actionable negligence."

The statute law does not impose upon those who operate street cars by electric motors or other equal power the duty of giving audible signals of the approach of their cars, and hence it has been the rule with the courts to leave it with the jury to determine whether, under the circumstances of a given case, the use of such signals is necessary to the exercise of that due care and caution which the common law requires. The courts have been slow to realize. that the use of greater motive power than horses in street-car propulsion inevitably leads to increased speed in the running of such cars and a corresponding addition to the risk and hazard of accident to those who have equal rights with those cars in the highways, and also to realize the demand which such changed conditions make for the recognition of some of the plain, self-asserting requisites of care commensurate with the danger to be avoided, as legal duty on the part of those who manage such cars. It has long been a dictate of common prudence to equip the engines and other movable apparatus of fire

departments and, as well, the ambulances of hospitals, which customarily move quickly through the streets, with gongs and bells to warn of their approach; and the managers of cars propelled by the new and greater motive power spoken of have almost universally, by providing such equipment, acknowledged at least the utility of similar appliances on their cars as fitting safeguards against accident. The swift and almost noiseless movement of those cars, without the preceding clatter of horses' hoofs, emphasizes the practical wisdom and humanity of the provision thus made. We deem that, in the operation of such cars, the use of audible warning signals of their approach is so plain and constant a requisite of care and prudence that we should hold it also to be a legal duty. The use of dangerous, greater motive power than has been customary and is safe in highways, apt to be crowded thoroughfares, is the creation of extra danger, which exacts, as a duty from its creators, the use of the extra precaution of audible signals. The principle invoked is not new. *Pennsylvania Railroad Co.* v. *Matthews*, 7 *Vroom* 531.

Cogent reason for the recognition of this duty appears to be well illustrated by the case made by the testimony offered by the plaintiff in this cause—that the defendant's car was rounding a curve one hundred and fifty feet from an intersecting street, upon a descending grade, at the rate of fifteen miles per hour, so that it came into vision from the curve and reached and passed the intersection in less than seven seconds.

A discharge of the duty will not involve a constant clang of the gongs of such cars, but the judicious use of them as intersecting highways are approached and when persons are upon the car tracks or are apparently about to go upon them.

The question whether the omission of such a signal in the instance considered was the proximate cause of the accident was a question for the jury, which the judge properly left to it.

We do not deem that, in this respect, there was error in the judge's charge.

Error is further assigned upon the refusal of the court to direct the jury to find for the defendant..

It is deemed that he properly so refused. From the proofs, two conclusions as to the facts could reasonably be reached— one favorable to the plaintiff's recovery and the other unfavorable to it, which conclusions related both to question as to the defendant's negligence and question as to contributory negligence upon the part of the plaintiff. In such a situation the case belonged to the jury. *Bahr* v. *Lombard Ayres & Co.*, 24 *Vroom* 233.

In the next place, the defendant assigns as error the failure of the trial judge to specifically charge the jury (1) that if permanent obstacles intervened to prevent observation, reasonable prudence required the driver of the fire-truck to have so regulated the speed of his horses as to have been in position to stop before going on the car track if it was not safe to go on, and (2) that, in like case, similar prudence should require delay in going on the track until the driver could assure himself of safety, and (3) that reasonable prudence required that the judgment to have been formed by the driver should have been formed while it was possible for him to have acted prudently in view of the then conditions, not after he got himself into a position where the peril was already incurred.

The trial judge charged the jury that " the plaintiff was bound to exercise, under the given circumstances, that degree of care that an ordinarily prudent man, under like circumstances, would feel called upon to exercise." Then, after referring to the plaintiff's knowledge of the locality of the accident and of the character of the vehicle he drove, he added : " Now, it was under these circumstances that the plaintiff attempted to cross the track of the defendant corporation. The measure of the duty of the plaintiff in crossing a public highway traversed by surface cars propelled by electricity, was to use such care for his safety as a reasonably prudent man would use under the circumstances."

The correctness of this exposition of the law is not disputed. The objection is that the judge did not charge what, in point of fact, a reasonably prudent man should have done under suggested circumstances—that is, did not apply the rule as to reasonable prudence to conditions postulated by the defendant's counsel. He was not asked to declare a legal principle, but to make application of the principle already declared upon an assumption which the proofs show suggested part only of the circumstances which should have entered into and influenced the jury's conclusion. We agree with the Supreme Court that these requests treated of matter within the function which strictly belonged to the jury, and that it was discretionary with the judge whether he would comply with them, and not error for him to refuse to comply.

At the end of its opinion the Supreme Court animadverted upon the form of the exception under which review of the court's failure to charge was sought. The defendant's request to charge involved six distinct propositions stated in six paragraphs, each of which was numbered. The exception was " to the refusal of the court to charge *specifically* as requested." The criticism of the Supreme Court was that the exception treated the six propositions as a single request, every part of which should be well founded or the whole should fail. While we do not commend the form of the exception, we deem that, under the request, it was intended to present to the court for its charge six separate propositions, and that the exception was intended, as the almost universal practice in our trial courts has established and as the word "specifically" implies, to challenge the failure to charge each of the six propositions. In other words, being taken in the hurry of the conclusion of the trial, it was meant to answer the purpose of several distinct exceptions. The intention of the exception being clear, we think that the plaintiff in error should have the review the exception was designed to secure for it.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, GUMMERE, LIPPINCOTT, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, NIXON.    11.

*For reversal*—None.