111 N.J. Super. 50 (1970)
267 A.2d 64
JERSEY CITY REDEVELOPMENT AGENCY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, ET AL., PLAINTIFFS-APPELLANTS,
v.
GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1970.
Decided July 1, 1970.
*53 Before Judges CONFORD, COLLESTER and KOLOVSKY.
*54 Mr. Benjamin H. Chodash argued the cause for appellants (Messrs. Krieger, Chodash & Politan, attorneys).
Mr. George R. Handler argued the cause for respondent Goldhand, Ltd. (Messrs. George R. and William L. Handler, attorneys).
Mr. Herman C. Silverstein argued the cause for respondents Papp and Dashev, and as Amicus Curiae on behalf of others similarly situated (Rachel Leff, Esq., on the Brief).
Mr. Philip R. Carlin argued the cause for respondents Oswald (Messrs. Goldberg & Carlin, attorneys).
A Statement in Lieu of Brief was filed by Mr. George F. Kugler, Jr., Attorney General of New Jersey (Mr. Arthur Abba Goldberg, Deputy Attorney General of Counsel).
The opinion of the court was delivered by CONFORD, P.J.A.D.
This action was begun by Jersey City Redevelopment Agency (Redevelopment) and John J. Marchese, individually and as an officer of Redevelopment, to obtain a judgment declaring unconstitutional N.J.S.A. 20:1-9 and N.J.S.A. 40:55-21.10 insofar as those enactments provide that in eminent domain proceedings involving the development or redevelopment of blighted areas the value of any property sought to be acquired shall be determined at no less than the value thereof as of the final declaration of blight by the municipality concerned. The Law Division in a well-considered opinion by Judge Fink (unreported) sustained the statutory provisions as valid and granted summary judgment to defendants. We agree with that determination.
The case concerns the Henderson Street (Jersey City) Urban Renewal Project. On February 2, 1960 the governing body adopted a resolution approving the project. As required by law, the resolution included a declaration of blight as to the area involved. Initial steps toward condemnation of any *55 property within the 24.8 acres of the project did not take place until 1969. In the meantime, L. 1967, c. 217 and L. 1967, c. 218, took effect, providing, as noted above, for a minimum valuation in blight condemnations of the value of the property as of the date of declaration of blight by the municipality.
Pending argument of the appeal defendant Goldhand, Ltd., owner of a parcel of land affected, moved to strike Redevelopment and Marchese (in his official capacity) as plaintiffs-appellants for lack of standing to assert the unconstitutionality of a legislative enactment. We reserved decision pending oral argument. We fully agree that Redevelopment, as a municipal agency and creature of the State, and Marchese as its official, is without standing to make the contention urged below and here that the statutes as thus amended deprive it of equal protection of the laws contrary to the Fourteenth Amendment. See Camden County v. Pennsauken Sewerage Auth., 15 N.J. 456, 470 (1954). However, Redevelopment also argues that the acts violate the constitutional prescription of "just compensation" for private property taken for public purposes and (on appeal for the first time) that they effect an unconstitutional donation of public funds to private persons. Rather than debate the question whether the agency, or Marchese as an official thereof (or Marchese as a taxpayer), has standing to assert either or both of those asserted constitutional deficiencies, we deem it preferable in the public interest to settle the constitutional questions presented on their merits. The motions to dismiss are consequently denied, but without prejudice.

I  EQUAL PROTECTION
Plaintiffs contend that while public bodies having the right of condemnation are subject to the rule, in all other kinds of condemnation, that valuation is fixed as of the date of filing the complaint in the proceedings, N.J.S.A. 20:1-9; State v. Nordstrom, 54 N.J. 50, 53 (1969), condemnors *56 of blighted property are arbitrarily singled out for subjection to the rule of valuation as of the date of declaration of blight  a date which may, as here, be years earlier than the filing of the complaint or the taking of possession of the property by the public agency.
Aside from the point of lack of standing of a municipal body to assert denial of equal protection by the State Legislature, as noted above, the contention lacks intrinsic merit. The legislative treatment of blight cases is based on the common knowledge born of widespread experience that the pronouncement of blight by a public body authorized to condemn generally produces a severe downward phase in the value of the property. Potential buyers and long-term lessees are discouraged, the rate of tenant-vacancies increases, and the incentive for protective maintenance is dulled.
The Supreme Court clearly implied its concurrence in the reasonableness of the legislative action here debated when it recently said, in another blighted area-condemnation case:
There can be no doubt that a declaration of blight ordinarily adversely affects the market value of property involved. This is unfortunate because in so many instances the physical taking of the property does not occur for a number of years. In the meantime the owner can only wait for that ultimate taking; there is usually no reasonable market otherwise open to him for sale of the property. Moreover, in the interim his good housekeeping incentive generally recedes and deterioration of the building sets in. The Legislature has recognized the difficulty and has partially rectified it by providing that when property previously declared blighted is condemned the value "shall be fixed and determined to be no less than the value as of the date of the declaration of blight * * *." L. 1967, c. 217, § 1; N.J.S.A. 40:55-21.10.
In fairness, it is not enough to assure the property owner that at some time, perhaps years hence, he will receive the market value of his property as of the date of the declaration of blight. Meanwhile, he and his family may well be imprisoned economically in the blighted area because he needs the capital invested in the blighted-area dwelling in order to purchase a new home elsewhere. Consequently, he must endure the deterioration that afflicts a neighborhood at an accelerated pace following a declaration of blight. In this contest, equitable considerations call for action by the public authority to effectuate the redevelopment plan with reasonable dispatch, at least *57 to the extent of the financing necessary to acquire the land to be redeveloped. [Lyons v. Camden, 52 N.J. 89, 99 (1968)[1]]
We find no improper classification by the Legislature in providing for a valuation date for condemnation of property declared blighted different from that applicable to the generality of condemnation proceedings.

II

VIOLATION OF PRINCIPLE OF "JUST COMPENSATION"
Plaintiffs argue that by fixing the date of valuation at a time remote from the date of "taking" the Legislature has assumed the authority to determine the "measure of compensation," contrary to the asserted rule that this is a judicial rather than a legislative function. They rely upon Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1892). However, in using language of the aforestated import (at 327, 13 S.Ct. 622) the court there was dealing with a congressional act specifying that in the Government's condemnation of the owner's river locks and dams, value should be fixed without regard to the owner's franchise to collect tolls. The court held that the effect of the act would be to give the owner less than just compensation for his property, contrary to the Fifth Amendment. Cf. United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014 (1923).
Thus, the effect of that and similar holdings is no more than that upon a complaint by a property owner that he has been accorded less than just compensation for property taken for public purposes the existence of a legislative rule affecting the quantum of compensation will not preclude the *58 exercise of the judicial function to determine whether the rule is compatible with the award of just compensation to that owner.
Here, of course, that situation does not exist. Here an arm of government, not the property owner, complains of the legislative action, contending in effect that excessive compensation is afforded the owner. For reasons to be stated, it is clear to us that in that context the Legislature has considerable latitude to provide broadly for fair treatment of the condemnee, short of giving away public funds contrary to the prohibition thereof in Article VIII, Section III, paragraphs 2 and 3, N.J. Constitution (1947).
The point here under discussion is given focus by a comparison of what was held in Wilson v. Long Branch, 27 N.J. 360, 373-374 (1958), cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958), and what was intimated in Lyons v. Camden, supra. In Wilson, dealing with a situation as of prior to the 1967 amendments here in question, the court rejected an owner's contention that the Blighted Area Act was invalid because it did not compel condemnation of property officially declared blighted, against the background of the fact that the very declaration of blight lessens or destroys the market value of such property, the argument being that the declaration therefore constitutes a compensable "taking." The court (at 374) cited previous authority holding that injury to private property ensuing from governmental action in a proper sphere is not "necessarily" a taking of the property within the constitutional prohibition against taking private property without just compensation. The injury to the owner from mere declaration of blight was ruled damnum absque injuria. Yet, notwithstanding the foregoing, it will be recalled that Justice Francis, who wrote for the Supreme Court in both cases, said in the Lyons opinion quoted above that the 1967 amendments now before us "partially rectified" the owner's plight, thereby auguring, in our view, approval of the validity of the amendments by the Supreme Court.
*59 Such results would not be inconsistent. They indicate that while the property owner has no absolute right, absent legislative sanction, to relief for devaluation of property consequent upon official declaration of blight, the Legislature has plenary authority to ameliorate the injury to the property owner by fixing the valuation date as of the time of declaration of blight. There is no rigid principle, constitutional or otherwise, that precludes consideration of other factors bearing upon the justness of compensation to the property owner independent of the narrow criterion of the value of the property as of the date of filing of the complaint. See, e.g., State Highway Com'r, State by v. Jones, 27 N.J. 257, 261-262 (1958). Wide latitude is vested in the Legislature for regulation "of the manner and method of exercising the power of eminent domain," subject only to express constitutional limitations. Port of N.Y. Authority v. Heming, 34 N.J. 144, 154 (1961), cert. den. 367 U.S. 487, 81 S.Ct. 1676, 6 L.Ed.2d 1241 (1961).
It has been held elsewhere that a de facto taking occurs when the municipality adopts a resolution for an urban renewal plan, followed by deterioration of the property, and that the valuation date in the subsequent condemnation proceedings should be fixed as of the date of the resolution notwithstanding that ordinarily the date of transfer of title would control. City of Buffalo v. Strozzi, 54 Misc.2d 1031, 283 N.Y.S.2d 919 (Sup. Ct. 1967; cf. Tharp v. Urban Renewal & Community Develop. Ag., 389 S.W. 2d 453, 456 (Ky. Ct. App. 1965). Similar determination has been had where affirmative actions by the city after declaration of blight have contributed to the devaluation. See In re Elmwood Park Project Section 1, Group B., 376 Mich. 311, 136 N.W.2d 896 (Sup. Ct. 1965).
The authorities amply support the concept of a penumbral zone wherein the harmful effect of public projects on private property may be regarded as not constitutionally compensable as of right but wherein the Legislature may nevertheless appropriately elect to compensate the owner. This is *60 such a case. See, e.g., Newark v. Hatt, 79 N.J.L. 548, 550 (E. & A. 1910); Burns Holding Corp., v. State Highway Comm'n, 8 N.J. Misc. 452-453, 150 A. 768 (Sup. Ct. 1930), aff'd o.b. 108 N.J.L. 401 (E. & A. 1931); Klement v. Delaware River Joint, etc., Comm'n, 119 N.J.L. 600 (Sup. Ct. 1938) aff'd sub nom. Colburn v. Delaware River Joint Toll Bridge Comm'n, 123 N.J.L. 197 (E. & A. 1939), rev'd on other grounds, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940); Newark v. Porter, 120 N.J.L. 389 (Sup. Ct. 1938); Cf. Tubular Service Corp. v. Comm'rs of State Highway Dept., 77 N.J. Super. 556, 562 (App. Div. 1963), aff'd 40 N.J. 331 (1963); 26 Am. Jur.2d, Eminent Domain, § 151, p. 365; Joslin Mfg. Co. v. Providence, 262 U.S. 668, 674, 43 S.Ct. 684, 67 L.Ed. 1167 (1923).
We conclude that the 1967 acts do not contravene constitutional principles concerned with just compensation for land taken for public purposes.

III

VIOLATION OF CONSTITUTIONAL PRINCIPLES AGAINST GIFTS OF PUBLIC FUNDS
We see no merit at all in the belated contention that allowing damages as of 1960 when "taking" did not here begin until 1969 means an invalid donation of public money to private persons to the extent of the excess, if any, of 1960 over 1969 values. The implied legislative determination that the decline in value was a result of the declaration of blight is presumptively correct. It cannot be said to be a gift of public funds for the Legislature to compensate the pecuniary victims of legislatively authorized actions of state instrumentalities. Compare the cases holding that a moral consideration may suffice to support an appropriation of public funds to private entities as against the constitutional proscription of donation of public funds to private persons or corporations. Morris and Essex R.R. Co. v. Newark, 76 *61 N.J.L. 555 (E. & A. 1908): Rader v. Union Tp., 39 N.J.L. 509 (Sup. Ct. 1877), aff'd 41 N.J.L. 617 (E. & A. 1879); Rutgers College v. Morgan, Compt'r, 70 N.J.L. 460, 474, 477 (Sup. Ct. 1904), aff'd o.b. 71 N.J.L. 663 (E. & A. 1905); and see Wilentz v. Hendrickson, 135 N.J. Eq. 244, 260 (E. & A. 1944).

IV

ABOLITION OF "DEFENSES" OF THE CONDEMNING AGENCY
Plaintiffs point to certain special circumstances related to the conduct of some of the defendant landowners subsequent to the blight resolution which assertedly render it inequitable to the condemning authority to bind it to 1960 values. They claim, as to various owners: leaving the property without adequate maintenance, producing excessive deterioration; leaving the property with inadequate insurance, a fire intervening; the collection by the owner of insurance proceeds where fire entirely destroyed a building; present ownership by "speculators" who purchased the property cheaply after the declaration of blight, etc. The argument is that the literal tenor of the 1967 amendments is to deprive plaintiffs of the "defense" of unjust enrichment of the owners in these several sets of circumstances and thereby to deny them "due process." Even if the statutes were construed to have the stated effect, an instrumentality of the State could not complain that the State denied it due process. But we do not read the amendments as in any way changing the existing law as to the legal consequences of mishandling of the property by the owners or other circumstances affecting fair compensation as between the parties, and occurring between the statutory valuation date and the taking of possession by the condemning agency. The trial judge also entertained this view. See, e.g., N.J. Highway Authority v. Wood, 39 N.J. Super. 575, 582 (App. Div. 1956), certif. den. 21 N.J. 551 (1956).
*62 Each of these so-called defenses will be met by the trial court on its merits in the course of the further proceedings as to any particular property. We imply no opinion as to any of them. Their incidence does not affect the question of the validity of the 1967 enactments which we herewith declare to be free from constitutional infirmity.
Judgment affirmed.
NOTES
[1] Lyons involved condemnation proceedings prior to the effective date of the 1967 amendments. The court ordered the proceedings expedited to minimize injury to the property owners. 52 N.J., at 100.