128 N.J. Super. 448 (1974)
320 A.2d 228
FORSTER W. FREEMAN, JR., PLAINTIFF
v.
PATERSON REDEVELOPMENT AGENCY, A PUBLIC BODY CORPORATE AND POLITIC UNDER THE LAWS OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 6, 1974.
*450 Mr. Douglas C. Borchard, Jr. for plaintiff (Messrs. Evans, Hand, Allabough & Amoresano, attorneys).
Mr. Harry Zax, for defendant.
DOAN, J.S.C.
In this eminent domain action plaintiff, an owner of commercial property in an area that has been declared blighted, seeks the appointment of commissioners to assess compensation or, in the alternative, to compel defendant redevelopment agency to initiate condemnation proceedings. Pursuant to an order to show cause and for a hearing under R. 4:67, this matter was heard in a summary proceeding. Although the order to show cause was limited to the first count of the complaint, counsel for both parties requested that the court consider the evidence and arguments presented as to both counts of the complaint and all issues in controversy, so that a full and final adjudication could be rendered. Inasmuch as the evidence presented is relevant to both counts of the complaint and the issues have been briefed by counsel, a consideration of the merits of the entire controversy is appropriate. R. 1:1-2.
The property that is the subject matter of this action is a three-story structure located in the downtown business district of Paterson. The building was constructed in 1924 and was acquired by plaintiff in 1958 by devise. The first two floors have been used for professional offices; the third floor *451 contains two residence apartments. The building itself has been maintained in good condition.
In accordance with the provisions of the Blighted Areas Act of 1949, N.J.S.A. 40:55-21.1 et seq., a large section of the Paterson business district was declared blighted, and a redevelopment plan adopted, in September 1964; the background history is described in Paterson v. Housing Authority of Paterson, 96 N.J. Super. 394, 401-403 (Law Div. 1967). The redevelopment plan is administered by defendant Agency, which is organized and operated pursuant to the Redevelopment Agencies Law of 1949, N.J.S.A. 40:55C-1 et seq. A redevelopment agency does have the power of eminent domain. N.J.S.A. 40:55C-12(j).
In the redevelopment plan plaintiff's property is identified as parcel 14 of block 1106 and is designated for acquisition and demolition. The adopted plan contemplates the construction of a parking garage, utilizing all or a portion of plaintiff's land. The property itself was initially appraised on January 6, 1965, but no offer to purchase was ever made. During the years of 1965 through 1971 there appears to have been little contact between the parties, although the plaintiff himself did testify that many times he was told that his property would be taken soon. Nevertheless, during the same period, the redevelopment agency did implement and complete certain other phases of the adopted plan.
On December 22, 1971 the events that precipitated and formed the basis of the present action commenced. At that time plaintiff was notified by the tenant who occupied the first-floor premises that the tenant would terminate the leasehold and vacate the premises on February 1, 1972. Coincidentally, plaintiff secured a prospective tenant, Gallo's Trophy Shop, which was relocating from a building across the street that had been acquired by the Agency. Because of the extensive renovations that would be necessary to make the premises suitable for its business, this prospective tenant did consult with representatives of defendant Agency before *452 finalizing the rental agreement and was advised that such a move would be unwise since plaintiff's property would likely be acquired within one year. This prospective tenant decided against the rental because of the impending acquisition. Subsequently, the premises were advertised for rent, but any interest by prospective tenants dissipated when it was learned that the property was included in the redevelopment plan.
Thereafter, plaintiff sought consideration of his property for acquisition because of a hardship situation. The property was inspected on January 21, 1972, and a review of the circumstances initiated. This hardship consideration was ultimately denied because the Agency erroneously assumed that the premises were fully rented since it had learned that certain carpentry work was being done on the first-floor area; in reality, this work was being done in order to repair damages caused by the removal of the previous tenant.
In May 1972 Gallo's Trophy Shop again contemplated rental of the first-floor quarters. From consultation with the Agency, Gallo's was informed that if the property was subsequently acquired, it would not be eligible for another business dislocation payment or reimbursement for any improvements to the property. Although the Agency recognized that such consultation would tend to discourage the rental, nevertheless its intention was to make this prospective tenant aware of the ramifications of a decision to rent. Again, Gallo's decided against the rental.
Plaintiff's property was successively reappraised on November 17, 1972, February 4, 1973 and March 8, 1973. Such appraisal would ordinarily indicate that acquisition was imminent. However, on May 17, 1973 plaintiff was informed that acquisition was not contemplated because no specific development proposal existed for that area and because there was a municipal policy against condemnation of property so as to remove it from the tax rolls without a tax-productive replacement project. The Agency reiterated plaintiff's right to maintain, improve, rent and sell the premises.
*453 Presently, plaintiff's property is one of four parcels on the northwest corner of Hamilton and Smith Streets which have not been acquired. The parcels designated for acquisition on the other corners have been acquired, but the intended developments have failed to materialize. Although the funds to finance acquisition of plaintiff's property are available, the Agency is in the process of transferring those funds to other projects that are ready for implementation.
In his complaint and in his brief plaintiff presents two arguments to support the relief demanded: 1) that actions of defendant Agency so interfered with plaintiff's beneficial use and enjoyment of his premises as to constitute a taking of private property without compensation, in violation of the Federal and State Constitutions, and (2) that the actions of defendant Agency and the delay in acquisition have diminished the value of plaintiff's property and are so unreasonable as to require the compelling of condemnation. Contrarily, defendant Agency argues that, in the absence of physical possession and actual deprivation of use, the facts adduced are insufficient to support a finding of a constructive taking, that any diminution of value is damnum absque injuria in this context, and that the judiciary should not interfere in a matter that is so enveloped in administrative discretion.
The theory advanced by plaintiff appears to be res nova in this state.

I
It is incontrovertible that the court does have the power to compel the condemnation of private property under appropriate circumstances. N.J.S.A. 20:3-5 expressly grants the court the power "to compel the exercise of [eminent domain] power." The determinative issue in this case is whether plaintiff has proved that his circumstances are such that condemnation is required by the constitutional, statutory, and case law.
*454 Generally, the problems posed by urban redevelopment and its effect upon the individual property owner have evoked different judicial and legislative responses on the questions of damages prior to the initiation of eminent domain proceedings. Three distinct approaches have evolved. In some states the constitutional provision regarding private property has been enlarged so as to require the payment of just compensation where private property is taken or damaged:
In a strict sense, inverse condemnation is used to obtain compensation for property claimed to have been "taken." However, in the approximately twenty-five states having constitutions which provide that property shall not be taken or damaged for public use without just compensation, theory also permits recovery when land is injured to a lesser degree. The damage clause has been added to the various state constitutions ostensibly in an effort to enlarge the rights of recovery available to landowners under the federal and then-existing state constitutions. [7 Nichols, Eminent Domain, § 14.02(5) at 14-19 (1973)]
The New Jersey constitutional provision has remained limited to the taking situation. N.J. Const., Art. I, ¶ 20.
As another distinct approach, the theory of a constructive taking has been utilized to justify a valuation date that is more realistic and just to the property owner:
The developing expansion of the theory of constructive "taking"  sometimes referred to as inverse condemnation and more recently in the case law as a de facto "taking"  has been responsive to the reality that activities carried on incident to massive, complex and time consuming programs launched by government to solve some of the acute problems that beset our society may so substantially interfere with one's use and enjoyment of his property as to constitute a compensable injury in a constitutional sense or as being within applicable statutory law, even though the power of eminent domain has not been formally exercised against the property in question and there has been no physical intrusion of it. [Redevelopment Auth. of Hazleton v. Hudock, 2 Pa. Cmwlth. 670, 281 A.2d 914, 917 (Cmwlth. Ct. 1971)]
Generally, the cases in which this view has been advanced have involved questions relating to the time as of which the condemned property should be valued, and, in holding in effect that the actions of the condemnor causing depreciation in the value of such property *455 amounted to a taking thereof, the courts have been able to permit the market value of the property to be established as of a date before the depreciation resulting from the condemnor's acts impaired such value." [Annotation, "Plotting or Planning in Anticipation of Improvement as Taking or Damaging of Property Affected," 37 A.L.R.3d 127, 131-132 (1971)]
In the oft-cited cases of In re Elmwood Park Project Section 1, Group B, 376 Mich. 311, 136 N.W.2d 896 (Sup. Ct. 1965), City of Cleveland v. Carcione, 118 Ohio App. 525, 190 N.E. 2d 52, 5 A.L.R.3d 891 (Ct. App. 1963), and Foster v. City of Detroit, 254 F. Supp. 655 (E.D. Mich. 1966), the constructive taking theory is, as generally, used to justify a valuation date before condemnation, but not as a basis for compelling condemnation itself. See also, Jersey City Redev. Agency v. Bancroft Realty Co., 117 N.J. Super. 418, 424 (App. Div., 1971); Becos v. Masheter, 15 Ohio St.2d 15, 238 N.E.2d 548, 551-552 (Sup. Ct. 1968), and Cinco v. City of New York, 296 N.Y.S.2d 26 (Sup. Ct. 1968).
As opposed to expanding the concept of a taking, the third approach expands the nature of compensation after a taking has otherwise occurred. See, e.g., Luber v. Milwaukee County, 47 Wis.2d 271, 177 N.W.2d 380 (Sup. Ct. 1970). New Jersey has followed this approach. N.J.S.A. 20:3-38 and 40:55-21.10 provide that where property is being acquired for redevelopment of a blighted area, it is to be valued at no less than its value as of the date of the declaration of blight. These provisions reflect "the concept of a penumbral zone wherein the harmful effect of public projects on private property may be regarded as not constitutionally compensable as of right but wherein the Legislature may nevertheless appropriately elect to compensate the owner." Jersey City Redev. Agency v. Kugler, 111 N.J. Super. 50, 59 (App. Div. 1970), aff'd 58 N.J. 374, 376 (1971). Moreover, this compensation approach coalesces a number of competing factors. It recognizes the damages suffered by the property owner after the declaration of blight. Lyons v. Camden, 52 N.J. 89, 99 (1968). It recognizes that "in condemnation proceedings *456 the quantity of land to be taken, its location and the time of taking are within the discretion of the body endowed by the Legislature with the right of eminent domain." Burnett v. Abbott, 14 N.J. 291, 294 (1954). It recognizes that "even though an area is declared blighted, the municipality may decide at a future date to drop the project." Housing Auth. of Hoboken v. Segal, 112 N.J. Super. 359, 364 (App. Div. 1970). Consequently, under the New Jersey approach the facts that plaintiff relies upon to establish a constructive taking would be appropriate to establish the quantum of damages after initiation of condemnation, but do not justify the compelling of that condemnation itself.
Laying aside the concept of a constructive taking, the evidence adduced at the trial would not support a finding that a taking has otherwise occurred. The defendant Agency has not entered into possession of the property and put it to public use so that mandamus may be utilized to compel payment. Jersey City Redev. Agency v. Kugler, supra, 58 N.J. at 378 (1971). This case does not involve regulatory action by a municipality or agency which "has deprived the landowner of all beneficial use of his lands for indeterminate lengths of time." E. Rutherford Industrial Park v. State, 119 N.J. Super. 352, 371 (Law Div., 1972) (emphasis added). The damage to plaintiff's property does not constitute "total or substantial destruction of its beneficial use" and is not "different in kind from the damage suffered by other property owners in the area." Morristown Bd. of Ed. v. Palmer, 88 N.J. Super. 378, 390 (App. Div., 1965), rev'd per curiam 46 N.J. 522 (1966) (emphasis added). Although one prospective tenant was discouraged from renting and other willing tenants have been difficult to find, nevertheless the premises can be used for rental purposes; the Agency's "actions and activities did not in themselves deny to [plaintiff] a market for their property." Redevelopment Auth. of City of Hazleton v. Hudock, supra, 281 A.2d at 918. In large measure, plaintiff's difficulties are shared with others in similar circumstances and stem from the redevelopment process itself.
*457 Accordingly, the facts adduced by plaintiff, although potentially establishing a compensable injury, do not support a conclusion that a taking of his property without compensation has occurred. In such circumstances the court cannot compel condemnation or appoint commissioners to assess compensation.

II
Wholly apart from the issue of a taking, plaintiff seeks the compelling of condemnation because the passage of ten years since the declaration of blight constitutes an unreasonable delay, hence pecuniary detriment. It should be noted, however, that during the years 1964 through 1971 plaintiff does not appear to have suffered any actual harm, damage or prejudice. During this period his property was fully rented and income-producing. There was no evidence adduced regarding any detriment incurred during this period. The issue presented then, is whether the ten-year period, per se, is sufficient to invoke the authority of the court.
Contrary to plaintiff's arguments, mandamus will not lie to compel a redevelopment agency to acquire a parcel of property in a declared blighted area:
Condemnation to acquire a property in blighted areas is distinguishable from other types of condemnation. The statute authorizing the taking after a declaration of blight, N.J.S.A. 40:55-21.10, provides that the municipality "shall not be required to acquire the real property * * *." Therefore, even though an area is declared blighted the municipality may decide at a future date to drop the project. If dropped, the owners, although they may suffer pecuniary loss, are without remedy. [Hoboken Housing Auth., supra, 112 N.J. Super. at 364]
This specific statutory provision was discussed and upheld as constitutional in Wilson v. Long Branch, 27 N.J. 360, 374 (1958). This provision contains no time limitation within which a redevelopment agency must act to acquire the property. In amending the Blighted Areas Act in 1967 the Legislature *458 recognized the absence of any time limitation in a statement appended to the Assembly bills: "There is no time period during which these development agencies must acquire the property needed to carry out the proposed plan." Footnote 1, Jersey City Redev. Agency v. Kugler, supra, 58 N.J. at 381-382. Since a redevelopment agency is not required to acquire the property and there is, designedly, no time limitation within which it must act, a court cannot compel initiation of condemnation before a taking, as discussed previously, has occurred.
Plaintiff has cited no case in which the court has ordered condemnation in the absence of facts which indicate that a taking has occurred. In State v. Milkon Realty Inc., 119 N.J. Super. 156 (Law Div. 1972), the court observed, in a purely dictum statement, that a "condemnee is not helpless * * * because mandamus is available * * * should the condemnor unreasonably delay in the proceedings to effect just compensation" (at 163). The "proceedings" referred to in that case were proceedings after a taking has occurred; the State there entered into possession before initiation of the condemnation proceeding. In support of its statement as to the availability of mandamus, the court cited (at 158) Haycock v. Jannarone, 99 N.J.L. 183 (E. & A. 1923), another instance where a taking had occurred without initiation of proceedings to effect just compensation. As shown previously, in this case no taking has yet occurred.
Principally, plaintiff relies upon certain comments of the Supreme Court in Lyons v. Camden, 52 N.J. 89 (1968). In that case the court stated that "equitable considerations call for action by the public authority to effectuate the redevelopment with reasonable dispatch" (at 99), and that if such proceedings were not done "within such time as is reasonable under the circumstances, plaintiffs may apply * * * for such relief as the demands of justice may require" (at 100). The court did not specifically order condemnation nor discuss mandamus to compel condemnation. As noted by the Appellate *459 Division in footnote 1 in Jersey City Redev. Agency v. Kugler, supra, 111 N.J. Super. at 57, "Lyons involved condemnation proceedings prior to the effective date of the 1967 amendments." In a case arising after the 1967 amendments, the Supreme Court discussed unreasonable delay as an element of just compensation, not as a basis for compelling condemnation:
In some situations the concept of [just compensation] requires the payment of interest on the market value of the property taken, particularly where the public agency concerned has been guilty of unreasonable delay in completing the condemnation action * * *." [Jersey City Redev. Agency v. Kugler, supra, 58 N.J. at 384.]
Clearly then, just as the actions of the redevelopment agency are relevant to the eventual assessment of just compensation, so, too, any unreasonable delay is relevant to the award of interest after a taking or initiation of condemnation by the agency. However, it does not support a court order compelling that condemnation, if such an order was permitted by the statutory provision.
Nevertheless, even assuming that the court could compel condemnation, the equitable considerations contemplated in Lyons are not present in this case. The court there was concerned with residential property, not commercial property as here. The court there was concerned that a family would be "imprisoned economically in the blighted area" (52 N.J. at 99), a situation quite unlike the owner of the commercial property in the present case. In Lyons the court was concerned with the "deterioration that afflicts a neighborhood at an accelerated pace following a declaration of blight" (ibid.); here there was no evidence of a similar effect. Moreover, in light of the agency's inability to secure a potential developer and the municipality's serious taxation problems, the present delay cannot be deemed unlawful under the circumstances. Accordingly, even the equitable considerations herein do not warrant the compelling of condemnation.
For the foregoing reasons, judgment for defendant shall be entered.